# NOVEMBER TERM, 1892. 513

Cleveland, Cincinnati, Chicago & St. Louis R. W. Co. v. Backus, Treasurer.

No. 16,769.

## The Cleveland, Cincinnati, Chicago & St. Louis Railway Company v. Backus, Treasurer.

Taxes.—*State Board of Tax Commissioners.*—*Assessment of "Railroad Track" and "Rolling Stock."*—*Right of Railroad Company to be Heard.*—*Power of Board to Make Corrections.*—*Statute Construed.*—Section 129 of the act relating to taxation, Acts of 1891, conferring upon the State Board of Tax Commissioners the same powers possessed by the county boards of review, gives railway companies the right to be heard by the State board in regard to the assessment and valuation of their "railroad track" and "rolling stock," made by said board, and gives to the State board the right to correct any valuation and assessment made in relation to such property.

Same.—*Statute Construed.*—*Act of 1891.*—*General System.*—*Valuation of Property.*—*Method of Ascertaining Applicable to all Alike Similarly Situated.*—*Railroad.*—*Constitutionality of Act.*—The act of 1891 relating to taxation provides a general system for the assessment and valuation of property; the method of ascertaining the valuation and assessing each class and kind of property applies alike to all persons holding and owning the same class of property; it applies alike to all persons under like circumstances and conditions, and it does not deny to railway companies the equal protection of the law, and is not in conflict with the Constitution of the United States.

Same.—*State Board of Tax Commissioners.*—*Finality of Action.*—*Fraud.*—*Effect on Action.*—When the State Board of Tax Commissioners have fixed the valuation of property falling within their jurisdiction, and have assessed such property, their action in that behalf is final and can not be avoided or set aside, except for fraud on the part of such board, which would render the assessment void.

Same.—*Taxing Officers and Boards.*—*Power to Correct or Abate Assessment.*—*Illegal Assessment.*—Officers or boards having the authority to assess and levy taxes may—as long as the tax lists are in their hands incompleted, upon their own motion, or upon application, when satisfied that any assessment is wholly or in part illegal—correct or abate the same without any express statutory authority to do so.

Same.—*State Board of Tax Commissioners.*—*Erroneous Assessment.*—*When Court Can Not Grant Relief Against.*—The court can not inquire into the proceedings of the State Board of Tax Commissioners, in the absence of statutory authority, and determine whether such board arrived at just val-

Cleveland, Cincinnati, Chicago & St. Louis R. W. Co. *v*. Backus, Treasurer.

uations or not, and grant relief against erroneous assessments of such board, and the court having no such power in this State, the decision of the State board is final.

SAME.—*Act of March 6, 1891.*—*Statute Construed.*—*"Railroad Track" and "Rolling Stock."*—*Method of Assessment.*—*The Unit Rule.*—*Interstate Commerce.*—The tax law of 1891 does not authorize the importation of values from other States, nor does the method of assessment of rolling stock, valued in accordance with the rule of rating the roads as a unit, and taking such a portion of its value as the length of the road lying within the State bears to the whole road, operate to import values upon which assessments for taxation are made; nor does such method of assessment tax interstate commerce.

SAME.—*Railroad.*—*Tracks and Rolling Stock.*—*State Board.*—*Upon what Information Valuation May be Made.*—The State Board of Tax Commissioners, in fixing a valuation on "railroad track" and "rolling stock," is not confined to the schedules and rates made by the railway companies, but such commissioners have the right to seek other information to enable them to arrive at a just valuation.

SAME.—*State Board of Tax Commissioners.*—*Not a Judicial Tribunal.*—*Ex Officio Members.*—*Eligibility of.*—*Appointment of Members.*—*Constitutionality of.*—*Statute Construed.*—The State Board of Tax Commissioners is not a judicial tribunal in the meaning of the Constitution, but has only such quasi judicial powers as has every public officer vested with discretionary power, and the members of such board, whom the law provides shall be appointed by the Governor, are not administrative State officers, as that, by the Constitution, they are required to be elected by the people, and the other *ex officio* members of said board, being State officers, are eligible to become members of such board.

RAILROAD.—*Taxation.*—*Schedule of Property and Statement of Value.*—*Duty of Company to File.*—*Notice to Property-Owner.*—*Right to be Heard.*—The law having required the owners of "railroad track" and "rolling stock" to file with the auditor of State a schedule of the same and the value thereof, and having made it the duty of the auditor of State to present such schedule to the State Board of Tax Commissioners, and having fixed a time for the meeting of such board, the owners of such railway property are bound to take notice of the time of the meeting of such board, and are entitled to no other notice; and the owners of such property, through their written schedules and statements of values, are heard by such board, and to be further heard, they must take notice of, and be present at, the sitting of such board.

STATUTE CONSTRUED.—*How Considered.*—*Other Statutes.*—*General Principles of Law.*—*Double Meaning.*—*Which Adopted*—*Invalidity Avoided.*—In construing a statute, the prime object is to ascertain and carry out the purpose and intent of the Legislature, and to that end the courts will look to all parts of the same statute, to other statutes, to the general principles

Cleveland, Cincinnati, Chicago & St. Louis R. W. Co. v. Backus, Treasurer.

of law, and will assign such meaning to the words of the statute construed as will make them all effective, if possible; and, when a statute will admit of two interpretations, one valid and the other invalid, it will receive the interpretation sustaining its validity, and no part of a statute is to be held meaningless if it can be avoided without manifestly violating the intention of the Legislature.

SAME.—*Act of March 6, 1891.—Constitutionality of.—Due Process of Law.— Equal Protection of the Law.—Taxation.*—The act of March 6, 1891, relating to taxation, creating a State Board of Tax Commissioners, and providing, among other things, for the assessment of "railroad track" and "rolling stock" of railway companies, by said State board, is a valid enactment, and does not deny to such property-owners "due process of law" or "the equal protection of the law" in the assessment of their property.

CONSTITUTIONAL LAW.—*Equal Protection of the Law.—Meaning of.—Right to a Hearing.—Right to Appeal.—Fourteenth Amendment to Constitution.*—The provision of the Constitution guaranteeing to all persons the equal protection of the law, does not require that all persons shall have the right of a hearing or trial before the same tribunal, and in all the same tribunals, and that they shall have the same right of appeal from one tribunal to another; but a law which operates alike upon all persons under like circumstances is not obnoxious to the provisions of the fourteenth amendment to the United States Constitution, that no person shall be denied the equal protection of the laws.

SAME.—*Taxation.— Uniform and Equal Rate of Assessment.—Just Valuation of Property.—Duty of Legislature to Provide for. — Constitutional Requirements.—State Board of Tax Commissioners.—Railroad.*—The provision of the State Constitution, providing "for a uniform and equal rate of assessment and taxation" is complied with when the same basis of assessment is fixed for all property, and the same rate of taxation is fixed within the district subject to taxation; and the provision of the State Constitution requiring that the Legislature "shall prescribe such regulations as shall secure a just valuation for taxation of all property, both real and personal," is complied with when the Legislature provides that "railroad track" and "rolling stock" of railway companies shall be assessed by the State Board of Tax Commissioners, while all other property shall be assessed by local boards and officers.

SAME.—*"Due Process of Law" and "Law of the Land."—Meaning of.—Assessment of Taxes, etc.—Summary Proceedings.*—"Due process of law" and "law of the land" mean one and the same thing, and mean that one shall hold his life, liberty and property under the protection of the general rules which govern society, and the assessment and collection of taxes, and the hearing of property-owners with reference thereto are, from necessity, summary proceedings.

From the Marion Circuit Court.

*A. Baker, E. Daniels* and *J. T. Dye,* for appellant.

*A. G. Smith,* Attorney-General, *S. Claypool, J. W. Kern, A. C. Ayres, W. A. Ketcham* and *A. J. Beveridge,* for appellee.

OLDS, J.—This is a suit brought by the appellant against the appellee, to enjoin the collection of taxes assessed against the appellant railway company, by the State Board of Tax Commissioners of Indiana. The plaintiff is a corporation organized under the laws of Ohio and Indiana, and is, and has been for several years, engaged in the business of a common carrier of freight and passengers, and in operating a system of railroads in the States of Ohio, Indiana and Illinois, having various lines of railroads in Indiana, and its railroad track and rolling stock was assessed for taxation by the said State Board of Tax Commissioners, under the act of the Legislature of Indiana, approved March 6, 1891.

The principal question involved in this case relates to the constitutionality and validity of the law under which the appellant's property was assessed, though around this question cluster some others, which we will consider later on.

The act makes provision for the assessment of real and personal property by township and county assessors, creates a county board of equalization in each county in the State, and section 114 gives to such county boards "power to hear complaints of any owner of personal property, except 'railroad track' and 'rolling stock' of railroads, to equalize the valuation of property and taxables," and provides that it "shall pass upon each valuation, and may, on sufficient cause being shown, or on their own motion, correct the assessment or valuation of any property in such manner as will, in their judgment, make the valuation thereof just and equal," and provides (section 125) that

"appeals shall lie from the decision of any county board of review to the State Board of Tax Commissioners, which shall hear and determine the same, in such manner as it may by its rules prescribe, and certify its decision, which shall be final, to the proper county auditor."

In relation to the assessment of railway property, the act provides:

Section 77. "Between the first day of April, and the first day of June, of the year 1891 and at the same time in each year thereafter, when required by the county auditor, any person, company or corporation, so owning, managing, operating, or constructing a railroad, shall make and file with the county auditor of the respective counties in which the railroad may be located, a statement or schedule, verified by the oath of such person, or the president and secretary of such corporation, showing the property held for right of way, and the length of the main and all side and second tracks and turnouts, in such county, and in each city or town in the county through or into which the road may run, and describing each tract of land, other than a city or town lot through which the road may run, in accordance with the United States or other surveys, giving the width and length of the strip of land held in each tract and the number of acres thereof. They shall also state the value of improvements and stations located on the right of way. New companies shall make such statement in April next, after the location of their roads. When such statement shall have once been made, it shall not be necessary to report the description as hereinbefore required, unless directed so to do by the county auditor; but the company shall, during the month of April, annually, report the value of such property, by the description set forth in the next section of this act, and note all additions or changes in such right of way, as shall have occurred."

Section 78. "Such right of way, including the super-

structures, main, side or second track and turnouts, turn-table, telegraph poles, wires, instruments, and other appliances, and the stations and improvements of the railroad company on such right of way (excepting machinery, stationary engines, and other fixtures, which shall be considered personal property) shall be held to be real estate for the purpose of taxation, and denominated 'railroad track,' and shall be so listed and valued, and shall be described in the assessment thereof as a strip of land extending on each side of such railroad track and embracing the same, together with all the stations and improvements thereon, commencing at a point where such railroad track crosses a boundary line in entering the county, township, city or town, tending to the point where such track crosses the boundary line leaving such county, township, city or town to the point of termination in the same, as the case may be, containing —— acres, more or less (inserting name of county, township, city or town, or boundary line of same, and number of acres and length in feet), and when advertised or sold for taxes, no other description shall be necessary to convey a good title to the purchaser."

Section 79 declares that the railroad track shall be listed and taxed in the several counties, etc.

. Section 80 declares that "the movable property belonging to a railroad company shall be held to be personal property, and denominated, for the purpose of taxation, 'rolling stock;' such rolling stock shall be listed and taxed in the several counties, townships, cities and towns. in the proportion that the main track used or operated in such county, township, city or town bears to the length of the main track used or operated by such person, company or corporation, whether owned, operated or leased by him or them, in whole or in part."

Section 81 provides for the taxation of tools, materials for repairs, etc., in the county, township, city or town where the same may be on the 1st day of April of each

year, and section 82 provides for the taxation of all real estate of any railroad, other than that denominated "railroad track," and improvements thereon as lands and lots in the county, township, city or town where situated.

Section 83 declares that between the 1st day of April and the 1st day of June of each year, "every person, company or corporation, owning, constructing or operating a railroad in this State shall return to the county auditor a list or schedule, verified by the oath of such person so owning, constructing or operating, if an individual, or if a company or corporation, by the oath of the superintendent or secretary of such company or corporation, which shall contain :

"*First.* A full and correct detailed inventory of all the rolling stock belonging to, or leased, hired, used or operated by such company, and which shall distinctly set forth the number of locomotives and tenders of all classes, passenger cars of all classes, sleeping, chair, and dining cars, express cars, baggage cars, horse cars, cattle cars, coal cars, platform cars, wrecking cars, freight cars, flat cars, pay cars, hand cars, tank or oil cars, and all other kinds of cars, and the true cash value thereof on the first day of April of the current year, shall be set opposite each of them. Such list or schedule shall also set forth the number of miles of main track on which such rolling stock is used in the State of Indiana. For the purpose of taxation, such rolling stock leased or hired from persons or corporations, other than railroad companies, shall be deemed the property of the railroad company leasing the same, and for that purpose shall be valued at such proportion of the full value thereof as the time during which the same is used on such railroad during any year bears to the whole year.

"*Second.* Such list shall also contain a full and correct inventory of all other personal property of such railroad company not specifically taxed, including tools * * classi-

fied and separated into the particular county, township, wherein the same may be on the 1st day of April.

The third subdivision provides for an inventory of the real estate other than that denominated "railroad track."

Section 84 makes it the duty of county auditors to return to the proper assessors a copy of the lists as contained in the second and third specifications to be assessed by such assessors, the same to be treated in all respects in regard to assessment and equalization as other similar property belonging to individuals.

Section 85 reads as follows: "At the same time that the lists or schedules as hereinbefore required to be returned to the county auditor, the person, company or corporation running, operating or constructing any railroad in this State shall under the oath of such person, or the secretary or superintendent of such company or corporation, return to the auditor of State sworn statements or schedules, as follows:

"*First.* Of the property denominated 'railroad track,' giving the length of the main and side or second tracks and turnouts, and showing the proportions in each county and township, and the total in the State.

"*Second.* The rolling stock, whether owned or hired, giving the length of the main track in each county, and the entire length of the road in this State.

"*Third.* Showing the number of ties in track per mile, the weight of iron or steel per yard used in the main and side tracks, what joints or chairs are used in track, the ballasting of road, whether graveled, stone or dirt, the number and quality of buildings or other structures on 'railroad tracks,' the length of time iron or steel in track has been used, and the length of time the road has been built.

"*Fourth.* A statement or schedule showing: 1st, the amount of capital stock authorized, and the number of shares into which such capital stock is divided. 2d, the

amount of capital stock paid up. 3rd, the market value, or if no market value, then the actual value of the shares of stock. 4th, the total amounts of all indebtedness, except for current expenses for operating the road. 5th, the total listed valuation of all its tangible property in this State. Such schedule shall be made in conformity to such instructions and forms as may be prescribed by the auditor of State."

. Section 86 subjects the persons, companies and corporations to a penalty for failure to file such reports.

Section 87 reads as follows:

"The auditor of State shall annually on the meeting of the State Board of Tax Commissioners lay before said board the statements and schedules herein required to be returned to him, and said board shall assess such property in the manner hereinafter provided."

Section 117 creates the State Board of Tax Commissioners. It provides that "Immediately upon the taking effect of this act, the Governor shall appoint two skilled and competent persons, not more than one of whom shall be of the same political party, who, together with the secretary of State, auditor of State and Governor, the last three of whom shall *ex officio* be members, and the Governor chairman thereof, shall constitute and be a board to be denominated the State Board of Tax Commissioners, who shall perform the duties and have the powers hereinafter specified."

Section 118 requires the Governor to commission the persons so appointed, and that they shall each give bond, with sureties, in the sum of $10,000, and section 119 fixes the term of office of such commissioners; of the members first appointed, one shall hold for two and the other for four years, and thereafter they shall hold their offices for four years.

Section 120, and some of the sections next following, prescribe the duties and powers of the board.

The ninth subdivision of section 120 authorizes the board "to make such rules and regulations as the board shall deem proper to effectually carry out the purposes for which the board is constituted, and to make all necessary rules and regulations not inconsistent with law, as the board may deem necessary with respect to its own meetings and procedure."

Section 129 fixes the time and place of the meeting of such State board at the office of the auditor of State, on the first Monday of August each year, "for the purpose of assessing railroad property and equalizing the assessment of real estate as provided in this act;" and this section further provides that "The State Board of Tax Commissioners is hereby given all the powers given to county boards of review."

Two of the principal reasons on which it is contended that this act is void are:

*First.* That it denies due process of law to railway corporations touching the assessment and valuation of their property denominated, by the act, "railroad track" and "rolling stock," and is, therefore, repugnant to and in conflict with section 1, article 14 of the Constitution of the United States declaring, "Nor shall any State deprive any person of life, liberty, or property, without due process of law," and section 12, article 1 of the Constitution of Indiana, providing that "Every man, for injury done to him in his person, property, or reputation shall have remedy by due course of law."

*Second.* That the act is void for the reason that it denies to railway companies the equal protection of the laws, granted to all other persons, against erroneous, unjust and illegal assessments of the value of property upon which taxes are assessed to be laid, in that it grants to all persons the right or privilege to be heard before some tribunal authorized to correct errors or give appropriate relief concerning the correctness or legality of assessment, or ine-

NOVEMBER TERM, 1892.          523

Cleveland, Cincinnati, Chicago & St. Louis R. W. Co. v. Backus, Treasurer.

qualities in the same, or mistakes of fact or law, or illegal conduct of those charged with the duty of making the same after the original assessments have been made, and before they become final and conclusive, as a protection against burdens imposed by such mistakes and errors; but as to railway companies the act utterly denies all protection whatever against the same burdens against which others are protected, and therefore the act is in conflict with that part of the fourteenth amendment of the constitution of the United States, which provides that no State shall " deny to any person within its jurisdiction the equal protection of the laws." Section 1, article 14, U. S. Constitution.

We will consider these two objections to the validity of the statute in the inverse order from which they are stated. It is contended that railway companies are persons within the meaning of these provisions of the constitution, and this contention must be conceded to be correct.

To determine whether or not railway companies are denied equal protection of the laws given by the act to all other persons, we must first interpret the law and see what rights and privileges are given to them, and to others, and what burdens are likewise imposed on each, and see wherein the rights given to, and burdens imposed upon, others differ from those given to, and imposed upon, railway companies, for, if no real discrepancy within the meaning of the Constitution in fact exists between the rights of railway companies and other persons, then the objection that the railway companies are denied equal protection of the law must fail. The fact that a wrong was committed in the execution of the law, or that an error was committed and not corrected, is no objection to the validity of the law.

As to property other than that denominated by the law as " railroad track " and " rolling stock," including all property, real and personal, of individuals, the law provides for

its assessment by assessors, and it creates county boards of review in the several counties of the State, and by section 114, from which we have hereinbefore quoted, it is provided that such county boards " shall pass upon each valuation, and may, on sufficient cause being shown, or on its own motion, correct the assessment or valuation of any property in such manner as will, in its judgment, make the valuation thereof just and equal."

While this section may not give to county boards the right to change individual assessments of parties not legally before the board, it evidently contemplates and gives the right to parties whose property has been wrongfully or erroneously assessed to voluntarily appear before such county board and show that the assessment made against any property is erroneous, and have it corrected, and it vests in such county boards the power, on such showing being made, or on their own motion, to make corrections and change the valuation; and from a decision made against a party who is before such county board, it gives an appeal to the State Board of Tax Commissioners, whose decision upon the question shall be final.

By section 129 of the statute from which we have heretofore quoted, this same right to be heard is given to all property owners, and the power vested in the county boards of review, to correct and change assessments, by section 114 is engrafted into and made a part of the law governing the proceedings before the State board as to valuations and assessments over which such State board has jurisdiction and control, for by section 129, *supra*, it is declared that the State board is hereby given all the powers given to county boards of review. The right of parties to be heard, and the right of the county boards to hear showings as to assessments, and to correct and change assessments and valuations are a part of the powers vested in the county boards, and all their powers are transferred and vested in the State boards, so that if there is any power in the

county boards to hear grievances and make corrections in relation to property and assessment over which they have jurisdiction, then the State board has the same power in relation to property and assessment over which it has jurisdiction. Counsel claim and argue that this right of hearing and to make corrections exists before the county boards, and we think it does, but they insist that this right does not exist before the State board, but with this latter contention we can not agree, for certainly by the words of the statute we have quoted the same power in this respect is vested in the State board as is vested in county boards, in relation to property and assessments over which it has jurisdiction. And if the State board has jurisdiction over the property and assessments of railway companies denominated "railroad track" and "rolling stock," then railway companies have the right to be heard, and the State board has the right to correct any assessment and valuation made in relation to such property. That the State board has such jurisdiction and right, we think there can be no doubt.

By section 87 it is made the duty of the State board to assess such property in the manner afterwards in the act provided.

Section 129 provides, among other things, for the meeting of the State board, and fixes the time and place of meeting for the purpose as stated, " of assessing railroad property."

By the 9th subdivision of section 120, it is made the duty of the State board to make such rules and regulations not inconsistent with law as it may deem necessary, with respect to its meetings and procedure.

We think the interpretation we have placed upon the statute the fair and reasonable one to be given to it. It is well settled by the rules for the construction of statutes, that in construing statutes the prime object is to ascertain and carry out the purpose and intent of the

Legislature; that in construing statutes courts will look to all parts of the same statute, to other statutes, and to the general principles of law, and will assign such meaning to the words of the statute construed as will make them all effective. *Storm* v. *Stevens*, 104 Ind. 46; *Crawfordsville, etc., Turnpike Co.* v. *Fletcher*, 104 Ind. 97; *Hunt* v. *Lake Shore, etc., R. W. Co.*, 112 Ind. 69.

In *Lutz* v. *City of Crawfordsville*, 109 Ind. 466, it is said " if the Legislature manifests an intention to create a system for the government of any subject, it is the duty of the court to effectuate that intention by such a construction as will make the system consistent in all its parts, and uniform in its operation."

Bishop on the Written Laws states the rule of the courts in relation to statutes to be that "the courts will presume the Legislature intended its acts to be reasonable, constitutional and just; and when possible, consistently with any fair reading of the words, will so construe them as not to make them otherwise."

A statute which will admit of two interpretations, one valid and the other invalid, will receive the interpretation sustaining its validity. *Ferguson* v. *Borough of Stamford*, 60 Conn. 432.

In the case last cited, the Supreme Court of Connecticut said: " A statute which will admit of two interpretations, one just and valid, the other unjust and invalid, will ordinarily receive the former. It is no part of the duty of the court to be astute in order to invalidate a statute; it will rather strive to so interpret it as to sustain its validity and give effect to the intention of the Legislature." *Boisdere* v. *Citizens' Bank*, 29 Am. Dec. 453; *Bloodgood* v. *Mohawk, etc., R. R. Co.*, 31 Am. Dec. 313; *Santo* v. *State*, 63 Am. Dec. 487.

Any other construction than that which we have given to the words of section 129 of this act providing that " the State Board of Tax Commissioners is hereby given all the

powers given to county boards of review" would render the words meaningless, and this is never to be done if it can be avoided. It is a well recognized rule that the entire statute must be construed together, and that effect must be given to every part of a statute if it can be done without manifestly violating the intention of the Legislature. *Smith* v. *Randall*, 65 Am. Dec. 475 ; *Bellville, etc., R. R. Co.* v. *Gregory*, 58 Am. Dec. 589 ; *Parkinson* v. *State*, 74 Am. Dec. 522 ; *Montesquieu* v. *Heil*, 23 Am. Dec. 471 ; *Gates* v. *Salmon*, 95 Am. Dec. 139.

The question as to whether any of the other powers attempted to be conferred by section 114 on county boards are by section 129 vested in the State board, which would authorize the State board to serve notice, and change or increase valuations and assessments on property valued and assessed by assessors or county boards, is in no way involved in this case, and hence we indicate no opinion in relation thereto.

The statute, when viewed in the light of the construction we have placed upon it, and to which it is clearly entitled, provides for the assessment of property other than " railroad track " and " rolling stock," by assessors and county boards of review, and provides. that persons aggrieved may appear before county boards of review and make a showing, and vests in such county boards the power, either on such showing or on their own motion, to correct errors made in any assessment. And it further provides for appeals from the decisions of the county boards, by parties aggrieved, and a hearing by the State board, on appeal, which is final. In relation to property denominated " railroad track" and " rolling stock," it provides for the filing by railway companies, of a complete statement in relation to such property and its value, with the auditor of State, which shall, by such auditor, be laid before the State board. It further authorizes the State board and the members thereof to gain further information con-

cerning such property and its value, and to assess it at its true cash value; and that in making such assessment such State board shall not be bound by any reports or estimates of value of railroad property, real estate or other property, as returned to the county auditors, or auditor of State; and that such State board shall have power to correct any assessment of "railroad track" or "rolling stock," on showing or on its own motion. The difference existing in relation to the assessments of the various classes of property under the law is that the assessment of some classes of property commences with the value being first fixed by the assessor, with authority vested in the county board to hear the complaints of aggrieved parties, and correct the assessment, and a right on the part of the property owner to take an appeal to the State board.

In the case of railroad companies, their property denominated "railroad track" and "rolling stock," the schedule is filed with the auditor of State, and the assessment is made in the first instance by the State board; and their right to make a showing, and to have any errors made against them corrected, is to the same board that made the assessment, and that board is vested with power to correct errors and change assessments and valuations of such property in such manner as will, in their judgment, make the valuation thereof just and equal. Section 114, pp. 246–248, Acts of 1891.

When stripped of all verbiage, the gist of the objection to the law, on account of its not affording to railway companies in the assessment of the property denominated "railroad track" and "rolling stock" equal protection of the law, is that the State Board of Tax Commissioners, the highest body or board in the State having jurisdiction, or which is given authority to either assess or correct assessments of property, is given original jurisdiction in the assessment and valuation of this class of property. While it acquires jurisdiction in other classes of property, by

appeal, under the act an assessment and valuation fixed upon property is not necessarily final until passed upon by the State board. If parties are content with an assessment upon their property by the assessor or county board, it may rest at that point, but an appeal may be taken to the State board.

It seems to us that the claim that the statute denies to railway companies the equal protection of the law is based on an erroneous construction of the statute, for, with the view we take of the statute and the rights of railway companies under it, the claim that it denies equal protection has no substantial foundation to rest upon. Equal protection of the law does not require that all persons shall have the right of a hearing or trial before the same tribunal, and in all the same tribunals, and having the same right of appeal from one to another. If it has any such interpretation, then the theory upon which our courts are constructed and given jurisdiction in various causes of action—the right of appeal given in some cases, others not, and the jurisdiction of some courts made final in one class of cases, and in others not—is all wrong, and our system of jurisprudence must fall; but that such is not the theory or interpretation to be given to section 1, article 14, of the Constitution of the United States is too clear to admit of argument or the citation of authority. In our system of jurisprudence, courts of different grades and jurisdictions are established, and an appeal is allowed from one to another only when the right of appeal is given by statutory enactment.

In *United States* v. *Cruikshank*, 92 U. S. 542, Chief Justice Waite delivering the opinion, in discussing the provisions of the fourteenth amendment, says: "It prohibits a State from depriving any person of life, liberty or property, without due process of law; but this adds nothing to the rights of one citizen as against another. It simply furnishes an additional guaranty against any encroachment

by the States upon the fundamental rights which belong to every citizen as a member of society."

Following this he says:

" The fourteenth amendment prohibits a State from denying to any person within its jurisdiction the equal protection of the laws; but this provision does not, any more than the one which precedes it, and which we have just considered, add anything to the rights which one citizen has under the Constitution as against another. The equality of the rights of citizens is a principle of republicanism. Every republican government is in duty bound to protect all its citizens in the enjoyment of this principle, if within its power. That duty was originally assumed by the States, and it still remains there."

From this it would seem that this phrase in the amendment added but little to what had theretofore been assumed by the State, and embodied in the words due process of law.

In the case of *Caldwell* v. *Texas*, 137 U. S. 692, Chief Justice Fuller, in delivering the opinion of the court, said:

" By the fourteenth amendment the powers of the States, in dealing with crime within their borders are not limited, but no State can deprive particular persons or classes of persons of equal and impartial justice under the law. *   *   * And due process is so secured by laws operating on all alike, and not subjecting the individual to the arbitrary exercise of the powers of government, unrestrained by the established principles of private right and distributive justice."

It must follow that a law which operates alike upon all persons under like circumstances, is not obnoxious to the provisions in the fourteenth amendment to the United States Constitution, that no person shall be denied the equal protection of the laws, for such a law operates alike upon every person under like circumstances. If this were not true, then a large portion of the legislation of the va-

Cleveland, Cincinnati, Chicago & St. Louis R. W. Co. v. Backus, Treasurer.

rious States, universally held valid, would be obnoxious to this provision of the Federal Constitution. Laws providing for the assessment of certain property, for public improvements, only affect such property as designated, and persons owning no such property are unaffected by the law, but all who are in like circumstances may be affected by it, and, therefore, the law affects all equally under like conditions and circumstances.

The statute in question provides a general system for taxation and assessment and valuation of property, and the method of ascertaining the valuation and assessing each class and kind of property applies alike to all persons holding and owning the same class of property, and it applies alike to all persons under like circumstances and conditions; and we do not think it denies railway companies the equal protection of the law, and it is not in conflict with the provisions of the Federal Constitution.

2. Is the act objectionable on the grounds that it denies to railway companies due process of law? If this act is repugnant to either the Constitution of this State or the Constitution of the United States, for this reason, it would seem that almost any law for the assessment and taxation of property, which stopped short of resorting to a court of justice, and permitting an issue to be joined, and trial as to the value of the property, would be likewise objectionable. This act requires railway companies to first file verified inventories of their property and of its value, to be submitted to the assessing board. Then it allows, after assessment, a correction in assessments and valuation on the showing of the company, or on the motion of the board itself.

Judge Cooley, in his work on Taxation, 2d Ed., p. 432, says: "Very summary remedies have been allowed, in every age and country, for the collection by the government of its revenues. They have been considered a matter of State necessity. Without them it might be possible

for a party which had been defeated in its efforts to obtain possession of the government in the constitutional way, to cripple the government for the time being, and possibly break it up altogether. If the State might be deprived of the resources for continuing its existence and performing its regular functions until a revenue could be colletced by the processes provided for the enforcement of debts owing to individuals, it would be continually at the mercy of factions and discontented parties. Obviously this could not be tolerated."

At page 47 the author says: "There is a constitutional guaranty which has come to us from Magna Charta, which declares that no person shall be deprived of life, liberty or property, except by the judgment of his peers or the law of the land. The alternative provisions of this guaranty have sometimes been supposed to mean the same thing, and the guaranty itself to entitle every person to have any demand made upon him submitted to the determination of a jury of the vicinage. Such a construction applied in tax cases would work a thorough and radical change in the principles on which taxation is now supposed to rest. * * * Such a construction of a clause agreed upon as an important provision in a charter of government can never have been intended."

The words "law of the land" and "due process of law" mean one and the same thing, and mean that one shall hold his life, liberty and property under the protection of the general rules which govern society, and, therefore, the learned author from which we have quoted, on page 48, in speaking of words the law of the land, well says: "The clause recited from Magna Charta does not imply the necessity for judicial action in every case in which the property of the citizen may be taken for the public use. On the contrary, a legislative act for that purpose, when clearly within the limits of legislative authority, is of itself the law of the land."

This is true not only of an act for levying taxes, but in everything which pertains to the assessment and collection of taxes.

Judge Cooley in his work recognizes the right of a party to a hearing before his rights are finally precluded, and it is only necessary to determine what constitutes a hearing, so that the individual will not be deprived of his property without due process of law, or what is the character of the hearing contemplated in the assessment and collection of taxes, as to constitute due process of law. Certainly it is not a judicial proceding, a trial by jury, but a summary hearing that is contemplated in such proceedings.

Judge Cooley, p. 747, Cooley on Taxation, *supra*, says: "While the assessor still has the list or roll in his hands incompleted, he may abate any assessment on his own motion, or on an application, when satisfied that it is either wholly or in part illegal or unjust. No statute could be necessary for this." By this rule the State board, which assesses "railroad track" and "rolling stock," while in session and having control of the assessment, could remit any illegal or unjust assessment made against any railway company, in the absence of any express statutory authority giving them the right to do so. But he says taxing officers and boards of review, in the absence of special authority, are to accept the assessment as legal and just, and levy and collect the taxes accordingly.

The taxing officers and boards are such as have no power to assess, and he states the remedy usually given by statute for the correction of errors is by review, either by the assessor himself, or in some form of appellate proceedings. The rule as recognized by Mr. Cooley is that if the individual have the right to a hearing, either before the assessor himself or some reviewing board having the right to correct the assessment, the requirements of the Constitution is complied with, and the individual is not denied due process of law.

In *Hannibal, etc., R. R. Co.* v. *State Board etc.*, 64 Mo. 294, it was held that the State board having power to assess railway property, the assessment would be valid, even· though their record showed that the board heard no evidepce. In the same case it was held that, under the laws of that State, every person had an appeal from the assessment of his property for taxation, and that rail-road companies should have the same right, and that great injustice might be done by the board, for which they would be remediless until the Legislature had provided for an appeal in their favor, and that the courts can not inter-pose between the board and the companies.

In *Porter* v. *Rockford, etc., R. R. Co.*, 76 Ill. 561, speak-ing of the assessment of the property of railway compa-nies by the State Board of Equalization, under a law very similar to the statute under consideration, the court says:

"Whether property is assessed by local assessors or by the State Board of Equalization, it is, in the language of the Constitution, 'assessed by some person or persons elected or appointed in the manner the General Assembly has di-rected, and not otherwise.' No attempt is made by this clause of the Constitution to limit the number of those who shall be elected or appointed for this purpose, or to prohibit, * * * or in any manner to prescribe how the value of property shall be ascertained by them. Admit-ting that the chief end had in view was to secure uniformity in valuation, it would seem that the present system by which some property is assessed by local assessors, and other property is assessed by the board of equalization, would tend as much toward accomplishing that result as would a system by which all the property in the State should be assessed in the town in which it is located by the local assessor. * * * .We can not believe that a board of equalization, having the assessed values of all other taxa-ble property in the State before them, for the purpose of equalization, has less facility for fixing a fair, proportionate

value upon corporate property than the local assessors have. There is, moreover, an almost insuperable difficulty which must attend all attempts by local assessors to assess the capital stock, franchise, roadway and rolling stock of most railroad companies. Such roads are usually located through several counties. The costs of construction in a particular town or county affords no criterion of the value of that portion of the road, for every mile of the road is equally indispensable to its existence as a whole, and contributes, proportionally, to its principal earnings. Local improvements may, indeed, vary, and they are required to be assessed by the local assessors; but the road and its equipments constitute a single entire property. In determining the value of such property, the question is neither one of original cost nor of the intrinsic value of the various items of which the road and its equipment are composed, taken separately, but what is it worth, with all its capabilities and facilities, as a railroad? The franchise extends to the entire corporate property, and it is not possible that it can be divided. It must, if assessed at all, be assessed as an entirety, and this, as we have already shown, may be in connection with the property to which it is attached."

Section 1, article 10, of the Constitution of this State, vests the power of taxation in the General Assembly. It provides that "The General Assembly shall provide, by law, for a uniform and equal rate of assessment and taxation; and shall prescribe such regulations as shall secure a just valuation for taxation of all property, both real and personal, excepting," etc.

The first clause of this section is certainly complied with when the same basis of assessment is fixed for all property, and the same rate of taxation is fixed within the district subject to taxation; that is to say, there is uniformity and equality of assessment and taxation when all the property is to be assessed at its true cash value, and the same rate

is fixed on all property subject to assessment for the tax. If it be a tax for State purposes, the rate must be the same throughout the State; if for county purposes, or township purposes, the same rule would apply. The law under consideration is not subject to objection on account of inequality in rate of assessment or taxation, for it "provides that all property shall be assessed at its true cash value, and the rates are the same within the respective taxing districts," and no objection is urged to the law on this account. *Gilson* v. *Board, etc.,* 128 Ind. 65.

As to the latter clause of the section of the constitution providing that the General Assembly "shall prescribe such regulations as shall secure a just valuation for taxation," it leaves it to the Legislature to prescribe the mode by which the valuation of all property shall be ascertained, enjoining upon them the one obligation to provide such regulations as shall secure a just valuation, leaving to the Legislature the mode of ascertaining the valuation. There is certainly no reason why the Legislature may not, under the Constitution of the State, provide for fixing the value of "railroad track" and "rolling stock" of railway companies, by the State Board of Tax Commissioners, while other property is assessed by local boards. The value is ascertained according to regulations prescribed by the Legislature, and we are unable to see any reason why a valuation secured in that way should not be a just valuation.

The Legislature, by the acts in question, has prescribed regulations for the purpose of securing the valuation of all property for taxation; the method prescribed would seem to have in view the fixing of the value on property by persons and boards best calculated to know the value of the property required to be valued by them, and with a view of arriving at a just and equal valuation of all the property within the State subject to taxation, providing county boards of review to correct errors of local assessors, and then a State board to fix the value of

the property of railway companies extending through the State, and to equalize the valuations and assessments of property throughout the State. That the method prescribed in the act is one calculated to secure a just and equal valuation and assessment of property throughout the State, can not be reasonably questioned, and is one which the Legislature had the right to adopt. *Lowell* v. *County Commissioners*, 152 Mass. 380; *St. Louis, etc., R. R. Co.* v. *Surrell*, 88 Ill. 535; *Republic Life Ins. Co.* v. *Pollak*, 75 Ill. 292; *Case* v. *Dean*, 16 Mich. 11; State Railroad Tax Cases, 92 U. S. 575.

No notice other than that contained in the law itself is necessary to the validity of the assessment. The railway companies are bound by the law, and must take notice of its provisions. They submit a schedule to the State board through the auditor of State for the very purpose of having the valuation fixed upon the property, and the assessment thereof by such board. They, through their written schedule and statement of values, are heard by the board. The board has under its control the assessment roll of railway companies' property, and by the terms of the statute the board is given power to correct any errors in assessments, and to change valuations on showing, or on its own motion. Railway companies have the same right to a hearing before the State board that any other property owner has before the county board, for the same powers which are given to the county boards by the act are given to the State board. The State board is required to make rules governing its meetings and procedure.

In *Hyland, Auditor*, v. *Brazil, etc., Co.*, 128 Ind. 335, it is held that when the time for the meeting of a county board of equalization is fixed by law, and the duties of the board also fixed by law, and notice of the time of meeting of the county board as required by law having been given, and when the law required that corporations should make out and deliver to the assessor schedules

of their property, to be delivered to such county board, and the law made it the duty of such board to value and assess the property of such corporations, that no notice to the individual corporation was necessary to make the appraisement and assessment of the property of the corporation valid, the law having fixed the time of the meeting of the board, and requiring corporations to file schedules with the assessor, to be presented to the board, and made it the duty of the board to appraise and assess the same. Corporations were bound to take notice of the time of the meeting of the board, that their schedules would be presented to the board, and such board would appraise and assess the same as required by the law, and no other notice is necessary. There can be no difference in this respect as to the validity of a law, or the rights of the parties under it, between a statute which fixed the time for the meeting of the board, and one which fixed the time, and also required the auditor, or some other officer, to give notice of the time of the meeting in advance. For, if the law fixes the time of meeting, all persons are bound to take notice that it will meet, and when it requires a party to file a schedule of his property, and makes it the duty of the board to appraise and assess it, he is likewise bound to take notice of such facts also, and if he desires to be heard in relation to such matters as the board are charged with the duty of performing, he must appear and make his wishes known in relation thereto.

As was well said in *Hyland, Auditor,* v. *Brazil Block Coal Co., supra,* "the case is entirely unlike that of an individual tax-payer, for he can not know that the board will take any action upon his list, whereas the corporation knows, as matter of law, that the board will act upon its statement, since that is the principal purpose for which the sworn statement is required. It is manifest that neither the principle decided in *Kuntz* v. *Sumption* 117 Ind. 1, nor the

line of reasoning there pursued is relevant to the question here presented."

The statute under consideration fixes the time for the meeting of the State board. It requires railway companies to file schedules and inventories with the auditor of State, to be presented by him to the State board, and makes it the duty of the State board to appraise and assess the property denominated by the act as "railroad track" and "rolling stock" belonging to railway companies, at its true cash value, and further provides that the board shall not be bound by estimates of the value of such property as returned to the auditor of State; of all these provisions the railway companies are bound to take notice, and if they desire to make any further showing, it is the duty of such companies to appear before the board and make their showing.

In Cooley on Taxation, pages 364, 365, it is said:

"It is not customary to provide that the tax-payer shall be heard before the assessment is made, except where a list is called for from him; but a hearing is given afterwards, either before the assessors themselves, or before some court or board of review."

That is just what is provided for by the act of 1891. The companies are required by the law to submit a schedule, through the auditor of State, to the State board, and authorizes a hearing before the State board. As regards notice of the meeting of the board before a hearing may be had, the author, in the same section, continuing says:

"And of the meeting of that court or board, the tax-payer must, in some manner, be informed, either by personal notice or by some general notice which is reasonably certain to reach him, or—which is equivalent—by some general law which fixes the time and place of meeting, and of which he must take notice. The last is a common method of bringing the assessment to the notice of the tax-payer,

and it is perhaps the best of all, because it comes to be generally understood, and is remembered."

This principle is common in its application. When a party brings an action in court, the defendant is notified to appear on a certain day of a particular term of court. If the time at which the summons is returnable, or for which the notice is given, terminates without a disposition of the cause, the cause is still pending in court, to be heard at a subsequent term of court, and all parties are bound to take notice of the time fixed by law for the holding of subsequent terms of court. The matter of appraisement and assessment of the property of railway companies is pending before the State board, and parties are bound to take notice of the time fixed by law for the meeting of the board, which is in harmony with the theory that all persons are presumed to know the law.

Desty on Taxation, vol. 1, pp. 599 and 600, says:

"All parties are bound to take notice of the day of the meeting of the commissioners when the day is appointed by law; and under the general notice parties must attend the meetings, as they would the sessions of a court, until their assessment is passed upon, and when once this is done no change can afterwards be made without special notice."

The whole body of tax-payers are not required to attend a sitting of a county or State board of review, for the value is fixed upon most by the assessor; but such as are required to file with such boards, or either of them, a schedule of property, which property so scheduled is to be appraised and assessed by such board, as to such parties the matters of appraisement and assessment are pending before such board, the knowledge of which is conveyed to them by the law itself, and if they desire to be heard further, or to have errors corrected, they must appear before such board. *Smith, Tr.,* v. *Rude Bros. Mfg. Co.,* 30 N. E. Rep. 947.

Cleveland, Cincinnati, Chicago & St. Louis R. W. Co. *v.* Backus, Treasurer.

The conclusion we reach is that the statute under consideration is a valid enactment, and not in conflict with any provisions of the constitution, either of this State or the United States, and the State Board of Tax Commissioners had full power to assess the property of railway companies denominated "railroad track" and "rolling stock;" that the railway companies were properly before that board, and were entitled to a hearing, and were not denied due process of law or equal protection of the law, within the meaning of the Constitution of this State and the United States, and this conclusion we think is in harmony with the almost universal line of authorities, and we deem it unnecessary to take up and discuss in detail the numerous authorities cited in this case, as it would extend the decision to an unreasonable length, and we content ourselves by adhering to what we regard the correct principles deducible from the authorities.

The State board having fixed the valuation and assessed the property, their action in this behalf is final, and can not be avoided or set aside, except for fraud on the part of the State Board of Tax Commissioners, which would render the assessment void. Fraud vitiates even the most solemn judicial proceedings, and would likewise vitiate the proceedings of any tribunal created for the purpose of determining the rights of parties; but we do not think it can be seriously contended that the proceedings in this case seek to attack or avoid the valuation or assessment made by the State board, of appellant's property, on the ground that the State board was guilty of fraud, or acted corruptly in the discharge of its duties in the appraisement and assessment of the property of railway companies; and, if it were so contended, the averments of the complaint fall far short of being sufficient to present such a question.

What we have said disposes of the major portions of the questions presented in the case. The court having no power to review the proceedings, the action of the State

542      SUPREME COURT OF INDIANA,

Cleveland, Cincinnati, Chicago & St. Louis R. W. Co. *v.* Backus, Treasurer.

board being final, no right of action existed to set it aside, except for fraud, and it not being attacked on that ground, no evidence was admissible, for it is a well settled rule that the courts have no power to give any relief against erroneous assessments of such boards, except they are given such power by statute, and no such power is given in this State. Cooley on Taxation, p. 748, and authorities there cited; *Bass* v. *City of Ft. Wayne*, 121 Ind. 389; *Sims* v. *Hines*, 121 Ind. 534; *McCollum* v. *Uhl*, 128 Ind. 304; *Central, etc., Gravel Road Co.* v. *Black*, 32 Ind. 468.

The court can not inquire into the evidence upon which the board made its assessment and determine as to whether such board arrived at just valuations or not. The board has passed upon that question, and with its adjudication the matter ends. The decision of the State board being final, the record of that board required to be kept by the law, section 121 of the act of 1891, is conclusive.

It is contended by counsel for appellant that the law authorizes, and that the State board did import values to the "railroad track" and "rolling stock," taxable in Indiana, values belonging wholly to corporate property situate in other States, and taxable in other States, thus imposing double taxation on railway companies owning or operating interstate lines of railways.

This is based upon the provision of the statute, section 80 of the act, providing that the "rolling stock" shall be listed and taxed in the several counties, etc., in proportion that the main track used or operated in such county, etc., bears to the length of the main track used or operated by such person, and sections 83 and 85 requires that certain schedules of the rolling stock and railroad track shall be filed with the county and State auditors. These schedules are required to be filed for the purpose of giving a description of the property, and as a source of information as to value, but as expressly provided by the act, such values are not conclusive, the board may act on other information and

the personal knowledge of values, and the act expressly provides that the assessment shall be made of this class of property at its true cash value, the same as all other property.

Section 79 provides that "railroad track" shall be listed and taxed in counties, etc., in proportion that the length of the main track in such county, etc., bears to the whole length of the road in the State. It is so apparent, and we think so well settled by authority, that the value of a railroad or "railroad track" and "rolling stock" is so completely dependent on its length of line, connections, beginning, terminus and the character of the country through which it runs, in relation to its products, and the character and extent of its population, so that it can not be separated from these and many other surroundings and elements of value which necessarily must enter into its appraisement and assessment at its fair cash value for taxation, as that it can hardly be a controverted proposition. It is evident that no fair or equitable value could be placed on a "railroad track" by severing it into parts extending from one township or county line to another, or even from one State line to another, and estimating only the portion lying within the borders of a single township, county or State, independently of its connections beyond such lines, or by considering the cost of constructing any such division, nor could the value of an engine, or car, or other property coming within the class of property denominated in the act under consideration as rolling stock, be determined by considering the purpose for which it was used in any State or subdivision of a State, or the cost of construction of the same, and to limit the right of the State to tax "rolling stock" which might, at the date of assessment, be found within the State or subdivision of the State would be, in effect, to relieve such property from taxation.

A railroad is valuable as a whole, and every section of the line going to make up the whole is essential. The portion of a track crossing unreclaimed land of practically

no value is as valuable as that portion which runs through a populous city, in so far as its purpose and use is that of an interstate line, for without either the connection would be broken, and its use destroyed for that purpose. The value of each portion is increased by reason of its connections.

In the State Railroad Tax Cases, 92 U. S. 575, the court says: "This court has expressly held in two cases, where the road of a corporation ran through different States, that the tax upon the income or franchise of the road was properly apportioned by taking the whole income or value of the franchise, and the length of the road within each State, as the basis of taxation."

In speaking of the rate of taxation, the court, in the same case, says:

"But the contention is that the rule of rating the road, its rolling stock and franchises as a unit, and assessing it as a whole, on which each municipality levies its taxes according to the length of the road within its limits, violates the principle of this section. We have already discussed this question, and are of the opinion that taxes assessed by that rule on the railroad property, by the municipality, are uniform when the rate of taxation is the same on the assessment thus ascertained that it is on other property."

The court, in the case last cited, expressly recognizes the legality of an assessment on rolling stock valued in accordance with the rule of rating the road as a unit, and taking such a proportion of its value as the length of the road lying within the State bears to the whole road, for if an appraisement and assessment of a railroad, including in such valuation its rolling stock and franchise, can be assessed, certainly its rolling stock can be valued and assessed separately in the same manner, for values would not be imported in the one method more than the other.

The court, in the same case, discusses and sustains the same method of assessing the railroad track, and says: "It may

well be doubted whether any better mode of determining the value has been devised."

The decision in the *Western Union Tel. Co.* v. *Massachusetts*, 125 U. S. 530, is in harmony with this theory.

Presumptively, the line of railroad track and rolling stock is of no greater value per mile beyond the borders of the State than within the borders of the State, and we do not think the law necessarily requires a construction by which, if the line of the railroad track or rolling stock situate outside the State was of greater value per mile than that inside the State, the board should, by equalizing the value, import values, and tax property situate and taxable without the limits of the State and taxable in another State. When the whole act is read together, it purports to be only an act to tax such property as is subject to taxation within the State.

Section 80 declares that the movable property belonging to a railroad company shall be held to be personal property, and denominated personal property, while section 3 provides that "All property within the jurisdiction of this State, not expressly exempted, shall be subject to taxation."

Section 4 provides that, for the purpose of taxation, real property shall include all lands within the State, etc.; personal property shall include all goods and chattels within the State; all ships and boats, whether at home or abroad, and their appurtenances; all goods, chattels and effects belonging to inhabitants of this State situate without this State, except the property actually and permanently invested in business in another State.

The record of the State board, which, as we have said, is conclusive, affirmatively shows that the valuation of "railroad track" and "rolling stock" was fixed upon such property within this State. The record affirmatively shows, "The State Board of Tax Commissioners having

had under consideration the assessment of the several railroads in the State, the following valuation per mile of the various roads within this State." Then follows the schedules and valuations. Following such schedules and valuations, it is stated that "making liberal allowances for all proper deductions," they "fix the values" as heretofore set forth.

Objection is made to a recital in the record of the board, which, it is contended, shows affirmatively that the board fixed the value of the roads upon a money basis. We think there is nothing in this objection. It is a mere statement that "In arriving at the basis for the estimate of said values, the board considered the costs of the construction and the equipment of said roads, the market value of the stocks and bonds, and the gross and net earnings of each of said roads, and all other matters appertaining thereto, that would assist the board in arriving at a true cash value of the same." They considered all matters appertaining to the road that would assist them in arriving at a true cash value. The things they specifically enumerate were proper to consider.

The board was not limited to the schedule of the railway companies and rates fixed by them, but had the right to seek other information which would enable them to arrive at a just valuation. But this court can not consider or review the question as to what evidence the board relied upon in arriving at the value assessed. It is urged that the board heard a speech of an attorney in the absence of the railway companies and their counsel, on the question of the taxation of railroad property. Even if this were irregular, it does not vitiate the proceedings.

It is further urged that the method of assessment taxes interstate commerce, but we do not think so. Taxing the property of a corporation engaged in interstate commerce is not taxing interstate commerce. But what we have heretofore said disposes of this question, for in hold-

ing the method by which the valuation and assessments were made valid, relieves it from this objection ; as it can not, and is not contended that the property is not subject to taxation, but only contended that it can not be assessed in the manner prescribed in this act, which it is claimed imports values into this State from other States for taxation, thereby imposing unauthorized burdens on interstate commerce.

It is finally contended, that the act creating the State board and defining its powers and duties is unconstitutional and void, for the reasons, in brief, that judicial powers are granted to such board, and because two State executive and administrative offices are created and made continuously operative by the governor, and not elected by the people ; that executive and administrative officers can not exercise judicial powers, and judicial officers must, by the Constitution, be elected.

The members of the State board are not judicial officers, nor are judicial powers conferred upon them by the act under consideration, within the meaning of the Constitution. *Langenberg, Sheriff,* v. *Decker,* 31 N. E. Rep. 190. It is a very common, if not an almost universal, custom in this and other States, to make by statutory enactment, certain of the State officers *ex officio* members of the State boards of equalization. Such, we think, has been the almost universal, if not the unbroken practice in this State since the adoption of the present Constitution ; and if, as held in *Langenberg* v. *Decker, supra,* they are not vested with such judicial powers as to constitute them a court, but only exercise such *quasi* judicial functions as does every public officer vested with discretionary power, they are certainly eligible to become a member of such a board. Nor do we think the other members of the board, whom the law provides shall be appointed by the governor, are administrative State officers, charged with such duties as that, by the Constitution, they are required to be elected by the people. They are

not administrative officers in charge of any separate department of the State government. The same rule must govern in relation to their selection as the selection of members of local and county boards of equalization, and any persons or boards for the appraisement and assessment of values and benefits and injuries to property, and the practice of appointing such persons and members of boards has always existed. If they may be appointed for one sitting of a board, or to make appraisement of specific property, the value of which is to be ascertained, then, certainly, the law may authorize their appointment for a longer time, and that such appointments may be authorized by statute, we have no doubt, and this conclusion is in harmony with the decisions of this court in *State, ex rel.*, v. *Gorby*, 122 Ind. 17, and *State, ex rel.*, v. *Hyde*, 129 Ind. 296.

We have considered and decided all of the questions material to the determination of the cause. We find no error in the record.

Judgment affirmed.

Filed February 3, 1893.