MERIDIAN HILLS COUNTRY
CLUB, Petitioner,

v.

STATE BOARD OF TAX COMMISSION-
ERS, William L. Long, Chairman, Gor-
don E. McIntyre, Member, Durwood S.
Strang, Member, Respondents.

Nos. 49T05–8609–TA–00011 to
49T05–8609–TA–00013.

Tax Court of Indiana.

July 9, 1987.

Joseph D. Geeslin, Jr., Indianapolis, for petitioner.

Linley E. Pearson, Atty. Gen. by Ted J. Holaday, Deputy Atty. Gen., Indianapolis, for respondents.

FISHER, Judge.

## STATEMENT OF THE CASE

This case is an appeal from a final determination of the Respondent, State Board of Tax Commissioners [State Board], wherein the State Board determined the assessed value of the property of the Petitioner, Meridian Hills Country Club [Taxpayer] to be in the sum of $451,380 on March 1, 1979; $442,340 on March 1, 1982; and $449,140, on March 1, 1983.[1]

Petitioner challenges the assessments in three areas:

1. *The base rate value per acre for the golf course land.*[2]

2. *The base rate value of 6.5 acres occupied by the clubhouse, pro shop, swimming pool, tennis courts, parking lot, and similar improvements.*

3. *The true cash value of the improvements on the golf course.*

The hearing officer's recommendation and the State Board's final assessment determination were as follows:

(a) golf course land was assigned a base rate of $750 per acre;

(b) 6.5 acres of land with clubhouse, pool, tennis courts, etc., was assigned a base rate of $10,000 per acre; and

(c) true cash value of the golf course improvements was determined to be $374,900, which value is halfway between that assigned to Grade A and Grade B golf course by regulation (18 holes × $24,500 less 15% normal depreciation) (Appendix A.)

The Court also finds the following to be the facts:

1. The Taxpayer is a golf, tennis, and social club, located on the north side of Indianapolis, in Washington Township, Marion County, Indiana.

2. In Marion County, the township assessor assigned a base rate and true cash value of $750 per acre to all golf course land; however, for all golf course assessments appealed to it, the Marion County Board of Review applied a 30% obsolescence factor so that the true cash value became $525 per acre. For all golf course assessments in Marion County which were appealed to it, the State Board uniformly disallowed the 30% obsolescence factor which had been allowed by the Marion County Board of Review and the true cash value again became $750 per acre.

3. Golf course land is a special use property and the improvements, which are actually in the ground, are priced as an improvement item per hole, rather than being included in land value. (See Appendix A). The State Board determined Taxpayer's golf course per hole improvements as Grade A− to B+, with a base cost per hole of $24,500.

4. The State Board also pulled out 6.5 acres of land, upon which the clubhouse, swimming pool, garage and shop, fertilizer building, and tennis courts were located, and assigned a base rate to that land of $10,000 per acre. This was done because the base rate of $750 per acre was for undeveloped raw golf course land and did not include the cost of development fees, site preparation, utilities into the property, landscaping, or use.

5. The administrative rules particularly applicable to golf course assessment, 50 IAC 2–5–4 Schedule G, are attached as Appendix A. The rules 50 IAC 1–1–1 through 50 IAC 2–13–5 were duly adopted by the State Board as standard and are to be applied statewide in valuing real property for *ad valorem* property taxes.

6. Hillcrest Country Club [Hillcrest] is a like facility with similar improvements located in Lawrence Township, Marion Coun-

---

1. The issues presented apply to all three years. The difference in assessed valuation are due to added improvements not in dispute.

2. Base rate refers to "square foot value as determined by the appraiser." 50 IAC 2–2–6.

ty, Indiana. The State Board made a final assessment determination of Hillcrest for the same assessment date (March 1, 1979) and did not assess any land at a base rate or true cash value other than $750 per acre. The State Board classified the golf course improvements at Hillcrest as Grade B, $22,000 per hole, and allowed 65% normal depreciation and 30% economic obsolescence deductions therefrom.

7. Country Club of Indianapolis [CCI] is a like facility with similar improvements located in Wayne Township, Marion County, Indiana. The State Board made a final assessment determination of CCI for the same assessment date (March 1, 1979) and did not assess any land at a base rate or true cash value other than $750 per acre. The State Board classified the golf course improvements at CCI as Grade B, $22,000 per hole, and allowed 80% normal depreciation and 30% economic obsolescence deductions therefrom.

## DISCUSSION & DECISION

The applicable and relevant portions of the Indiana Constitution and statutes are as follows:

The General Assembly shall provide, by law, for a uniform and equal rate of property assessment and taxation and shall prescribe regulations to secure a just valuation for taxation of all property, both real and personal.

IND. CONST. art. X, § 1.

All tangible property which is subject to assessment shall be assessed on a just valuation basis and in a uniform and equal manner.

IND.CODE 6-1.1-2-2 (1982).

The Court may review only the evidence which was presented at the administrative hearing held by the State Board and determine whether the State Board's final determination was supported by substantial evidence, was an abuse of discretion, was in excess of statutory authority, or was arbitrary or capricious. *State Board of Tax Commissioners v. Gatling Gun Club, Inc.* (1981), Ind.App., 420 N.E.2d 1324. "The burden of proving the inaccuracy of the action of the Board rests upon the [Taxpayer]." *State Board of Tax Commissioners v. Traylor* (1967), 141 Ind.App. 324, 228 N.E.2d 46, 52.

■ The Taxpayer argues that the State Board acted in an arbitrary and capricious manner when it changed the assessments of golf course land from a true cash value of $525 per hole, as established by the Marion County Board of Review, to a true cash value of $750 per hole on all golf course assessments appealed to it. The Taxpayer's argument is without merit.

■ When the State Board receives a petition for review of an action taken by the County Board of Review, the State Board must conduct a hearing, assess the property in question, and correct any errors which may have been made. IC 6-1.1-15-4(a). There is no requirement that the State Board review all like property within the locality. In fact, the State Board "is to have nothing to do with individual assessments, except by appeal...." *Bell v. Meeker* (1906), 39 Ind.App. 224, 78 N.E. 641, 643; *Cummings v. Stark* (1893), 138 Ind. 94, 34 N.E. 444.

## GOLF COURSE LAND.

■ All of the golf course assessments which were appealed to the State Board were determined by the State Board to have a true cash value of $750 per acre with no obsolescence factor allowed. While there was some testimony that the golf course land in other counties in Indiana was assessed at a base rate of $450 per acre, such was not established by a preponderance of the evidence. Assuming *arguendo*, however, that such was the case it is irrelevant as the standard of uniform and equal applies to the locality in which the tax is levied. *Pittsburgh, Cincinnati, Chicago & St. Louis Ry. Co. v. Backus* (1893), 133 Ind. 625, 33 N.E. 432, *aff'd* (1894), 154 U.S. 439, 14 S.Ct. 1122, 38 L.Ed. 1041. *Bright v. McCullough* (1866), 27 Ind.App. 233.

There is no evidence as to how the base rate of $750 per acre was determined. The only evidence offered refuting that rate is the testimony of William Price as follows:

Q. Mr. Price, what is your opinion as to the appropriate value for Meridian Hill Country Club land on a per acre basis?
A. $450 per acre.
Q. Why do you think this is appropriate?
A. This is my belief as to how the land should be valued on golf courses, and I think that is appropriate and consistent with how it has been done in the past. Transcript at 19.

This is not probative and therefore not sufficient to sustain the Taxpayer's burden of proof. Since all final determinations of golf course land in Marion County made by the State Board had a true cash value of $750 per acre, the Court cannot say that such was not supported by substantial evidence, was arbitrary or capricious, in excess of statutory authority, or was an abuse of discretion.

To substantiate the claim of [the Taxpayer] that the [State Board] erred in the determination of the "true cash value" and the assessed valuation as not being substantially correct, it was imperative that evidence of probative value be introduced to prove such claim.

. . . .

Hence, proof of what the "true cash value" and "assessed value" should have been, to determine prejudice, was required in the case at bar. By [Taxpayer's] failing to produce such proof, the [State Board] assessment was not subject to a voidance on account of an illegal assessment. *Traylor*, 228 N.E.2d at 50.

6.5 ACRES.

■ There is some basis to classify the land which is occupied by the clubhouse and other improvements differently from that of the golf course land. *See Indiana State Board of Tax Commissioners v. Lyon & Greenleaf Co., Inc.* (1977), 172 Ind.App. 272, 359 N.E.2d 931. However the State Board valued all of the land at Hillcrest and CCI at $750 per acre. At one time, an assessing official assessed 9.45 acres of CCI land at $10,000 per acre; the same land was subsequently reduced to $750 per acre extended value by the Marion County Board of Review, and this was determined to be the true cash value by the State Board. "Uniformity and equality in tax burden do not occur unless identical property is assessed at the same tax value." *Lyon & Greenleaf*, 359 N.E.2d at 935.

The Court therefore finds that inasmuch as the land upon which the clubhouse and other improvements are located at Hillcrest and CCI was assessed at the same rate as was the golf course land, the State Board has not assessed like property in a uniform and equal manner and hence the assessment of 6.5 acres at a base rate of $10,000 per acre is arbitrary and capricious.

IMPROVEMENTS ON GOLF COURSE.

The State Board has determined the Taxpayer to be a Grade A— to B+ golf course; no evidence has been submitted that this was not proper. The State Board's hearing officer went to Taxpayer's golf course and determined its classification according to criteria set out in Appendix A. The Taxpayer argues that since CCI hosts a major golf tournament yet was only classified as a Grade B golf course, the State Board's classification of the Taxpayer as a Grade A— to B+ golf course is arbitrary and capricious. There was no other evidence presented that CCI should be rated a Grade A golf course and the fact of the golf tournament alone does not determine a violation of the uniform and equal mandate.

■ The Taxpayer also argues that since Hillcrest and CCI received a 30% economic obsolescence deduction on the golf course improvements, the failure to allow such to the Taxpayer violated the uniform and equal mandate.

A first blush it seems incredulous that CCI should be given a true cash value of its golf course improvements of 14% of its extended value (18 holes × $22,000 = $396,000 extended value, less 80% normal depreciation = $79,200, less 30% economic obsolescence = $55,440; true cash value $55,400) and that Hillcrest should be given a true cash value of its golf course improvements of 24.5% of its extended value

(18 holes × $22,000 = $396,000 extended value, less 65% normal depreciation = $138,600, less 30% economic obsolescence = $97,020; true cash value $97,000), while the Taxpayer should only be allowed 15% normal depreciation and no economic obsolescence.

50 IAC 2–1–8 provides in part:

Economic Obsolescence is a condition caused by factors extraneous to the property itself, such as changes in population characteristics and economic trends, encroachment of inharmonious land uses, excessive taxes, and governmental restrictions. The condition is generally incurable in that the causes lie outside the property owner's realm of control.

With respect to golf courses, the regulations provide:

Add an additional allowance for extraneous devaluing factors contributing to economic obsolescence as may be required. 50 IAC 2–5–4 Schedule G.

Since the Taxpayer does not argue that the normal depreciation was not warranted and did not present evidence as to the basis of the economic obsolescence deduction, the Court cannot say that the economic obsolescence allowance at Hillcrest and CCI was not justified and that it was not arrived at by the appraisers of these properties and based on "devaluing factors contributing to economic obsolescence" peculiar to each of those golf courses. The Taxpayer argues that the deduction was allowed because of the seasonal use of the golf courses, but it has presented no evidence that this was the basis of the economic obsolescence allowance at Hillcrest or CCI. The Court cannot say therefore that this is a violation of the uniform and equal mandate.

Accordingly, the final determination of assessed valuation of the golf course land and of the golf course improvements made by the State Board is affirmed. The assessed valuation of the 6.5 acres occupied by the clubhouse and other improvements is set aside and same is remanded to the State Board for reassessment in a manner consistent with this opinion.

ORDERED this 9th day of July, 1987.

APPENDIX A

| SCHEDULE G | GC YARD IMPROVEMENTS (CONT) | IND—100 |

GOLF COURSES

REGULATION PLAY

COSTS PER HOLE ARE GIVEN FOR FIVE QUALITY GRADES OF GOLF COURSES, RANGING FROM CHEAPLY BUILT COURSES TO EXCELLENT QUALITY COURSES DESIGNED FOR PROFESSIONAL PLAY.

THE COSTS FOR EACH GRADE HAVE BEEN DEVELOPED TO INCLUDE THE FOLLOWING

1. ARCHITECTURAL FEES TO INCLUDE ENGINEERING, PLANNING AND ON–SITE SUPERVISION (RANGING FROM 6% TO 10%).
2. NORMAL SITE PREPARATION AND GRADING, AND FOLLOW–UP FAIRWAY SEEDING AND LANDSCAPING.
3. SPRINKLER INSTALLATION TO INCLUDE THE WATER SOURCE, PUMPS, PIPING AND HEADS.
4. ROADWAY CONSTRUCTION TO INCLUDE BASE PREPARATION, PAVING AND BRIDGING FOR SERVICE ROADS AND CART PATHS.

GRADE B    GOOD QUALITY PRIVATE CLUB TYPE COURSE, 18 HOLES ON 130 ACRES OF ROLLING TERRAIN, 6,400 TO 6,500 YARDS LONG, RATED PAR 70, AND FEATURING AN AUTOMATIC SPRINKLER SYSTEM SERVING THE GREENS AND TEE AND A MANUAL SYSTEM ON FAIRWAYS, 5,000 S.F. TILED GREENS, 1,800 S.F. TEES WITH 2 TEE LOCATIONS, AN AVERAGE OF 2 BUNKERS PER HOLE AND GOOD QUALITY ASPHALT PAVED ROADWAYS.

GRADE C    AVERAGE QUALITY PUBLIC AND MUNICIPAL TYPE COURSE, 18 HOLES ON 110 ACRES OF PRIMARILY FLAT TERRAIN, 6,000 YARDS LONG, RATED PAR 67 TO 70, AND FEATURING A SEMI–AUTOMATIC SPRINKLER SYSTEM, SMALL TEES AND GREENS WITH FEW BUNKERS AND AVERAGE QUALITY ASPHALT OR GRAVEL ROADWAYS.

5. GREEN CONSTRUCTION TO INCLUDE SEEDING AND PRE–OPENING MAINTENANCE.

6. TEE CONSTRUCTION TO INCLUDE SEEDING AND PRE–OPENING MAINTENANCE.

7. BUNKER CONSTRUCTION TO INCLUDE PRE–OPENING MAINTENANCE.

GRADE AA SUPERIOR QUALITY COURSE, DESIGNED TO ACCOMMODATE PROFESSIONAL CHAMPIONSHIP PLAY, 18 HOLES ON 180 ACRES OF ROLLING AND LAKED TERRAIN, 7,200 YARDS LONG, RATED PAR 72, AND FEATURING A COMPLETELY AUTOMATIC SPRINKLER SYSTEM THROUGHOUT, 10,000 S.F. TILED GREENS, 2,400 S.F. TEES WITH 3 TEE LOCATIONS, 3 TO 4 BUNKERS PER HOLE (AVERAGE), GOOD QUALITY ASPHALT PAVED ROADWAYS.

GRADE A EXCELLENT QUALITY COURSE, DESIGNED TO ACCOMMODATE CHAMPIONSHIP PLAY, 18 HOLES ON 160 ACRES OF ROLLING AND LAKED TERRAIN, 6,800 TO 6,900 YARDS LONG, RATED PAR 72, AND FEATURING A COMPLETELY AUTOMATIC SPRINKLER SYSTEM THROUGHOUT, 8,000 S.F. TILED GREENS, 2,100 S.F. TEES WITH 2 TO 3 TEE LOCATIONS, AN AVERAGE OF 3 BUNKERS PER HOLE, AND GOOD QUALITY ASPHALT PAVED ROADWAYS.

GRADE D FAIR QUALITY COURSE, 18 HOLES ON 90 ACRES OF FLAT TERRAIN, 5,400 YARDS LONG, RATED PAR 64 TO 67, AND FEATURING A MANUAL SPRINKLER SYSTEM, SMALL TEES AND GREENS WITH VERY FEW BUNKERS AND GRAVEL ROADWAYS.

BASE COSTS PER HOLE

| | |
|---|---|
| AA GRADE | 32000 |
| A GRADE | 27000 |
| B GRADE | 22000 |
| C GRADE | 19000 |
| D GRADE | 16000 |

* NOTE THAT THE UPPER AND LOWER LIMITS OF THE COSTS PER HOLE REPRESENT NEITHER THE BEST NOR THE CHEAPEST QUALITY COURSES AND MAY BE FACTORED UPWARD (10 TO 25%) OR DOWNWARD (10 TO 25%) AS REQUIRED.

FOR HYBRID COURSES (COURSES EXHIBITING DIFFERENT QUALITY GRADE FEATURES) IT MAY BE NECESSARY TO INTERPOLATE BETWEEN GRADES.

TYPICAL COST–RANGE FOR COMPONENTS

| | |
|---|---|
| PUTTING GREENS, PER S.F. | .65 TO 1.10 |
| TEES, PER S.F. | .25 TO .40 |
| LAKES, PER S.F., ASPHALT LINED | .55 TO .95 |
| POLYETHELENE & SAND | .20 TO .30 |
| SPRINKLER SYSTEMS, PER HOLE | 5000 TO 13000 |
| SITE PREP AND LANDSCAPING PER HOLE | 2000 TO 6000 |

## SHORT PLAY

* COST RANGE PER HOLE, EXCLUDING STRUCTURES AND PARKING AREAS

EXECUTIVE COURSE, 18 HOLES ON 50 TO 60 ACRES 4,6000 YARDS LONG INCLUDING SPRINKLER SYSTEM

| | | | |
|---|---|---|---|
| EXCLUDING LIGHTING | 12000 | TO | 17000 |
| INCLUDING LIGHTING | 14400 | TO | 20000 |

PAR 3 COURSE, 18 HOLES ON 30 TO 40 ACRES, 2,800 to 3,000 YARDS LONG, INCLUDING SPRINKLER SYSTEM

| | | | |
|---|---|---|---|
| EXCLUDING LIGHTING | 8800 | TO | 12000 |
| INCLUDING LIGHTING | 10800 | TO | 14000 |

PITCH AND PUTT, 9 HOLES ON 10 TO 15 ACRES, 1,400 TO 1,500 YARDS LONG INCLUDING SPRINKLER SYSTEM

| | | | |
|---|---|---|---|
| EXCLUDING LIGHTING | 6000 | TO | 10000 |
| INCLUDING LIGHTING | 8000 | TO | 12000 |

* LOWER RANGE LIMIT DENOTES THE MOST TYPICAL COST PER S.F.

## GOLF COURSE DEPRECIATION

SUGGESTED NORMAL DEPRECIATION ALLOWANCES .. BASED UPON A COMPOSITE RATING OF THE OVERALL CONDITION DESIRABILITY, AND FUNCTIONAL USEFULNESS OF THE COURSE.

| RATING | DEPRECIATION |
|---|---|
| EXCELLENT | 0% * |
| VERY GOOD | 10% |
| GOOD | 15% |
| FAIR | 25% |
| POOR | 50% |

ADD AN ADDITIONAL ALLOWANCE FOR EXTRANEOUS DEVALUING FACTORS CONTRIBUTING TO ECONOMIC OBSOLESCENCE AS MAY BE REQUIRED.

* ALLOW ECONOMIC OBSOLESCENCE FOR NEW COURSES . . .

| | |
|---|---|
| 0 TO 1 YEAR OLD | 30% |
| 1 TO 2 YEARS OLD | 20% |
| 2 TO 3 YEARS OLD | 10% |