**INDIANAPOLIS HISTORIC PARTNERS,**
Petitioner,

v.

**STATE BOARD OF TAX COMMISSIONERS,**
Respondent.

Nos. 49T10–9506–TA–00051, 49T10–9506–TA–00052.

Tax Court of Indiana.

April 23, 1998.

James W. Beatty, J.F. Beatty, Landman & Beatty, Indianapolis, for Petitioner.

Jeffrey A. Modisett, Attorney General, Vincent S. Mirkov, Deputy Attorney General, Indianapolis, for Respondent.

FISHER, Judge.

Indianapolis Historic Partners (IHP) appeals the final determination of the State Board of Tax Commissioners (State Board) assessing its property as of the March 1, 1989 assessment date. IHP presents two issues, one of which the Court finds dispositive:

> Whether the State Board must value IHP's land pursuant to that part of the Marion County Land Valuation Order (Land Order) establishing values for apartment land.

Finding that IHP's assessment is contrary to law, the Court REMANDS this case to the State Board for further consideration.

## FACTS

IHP owns a three-story, twenty-four unit apartment building and a parking lot located near the intersection of Pennsylvania Street and Fort Wayne Avenue in Indianapolis. The parking lot is utilized by the building's tenants. The property is commonly known as The McKay and will be referred to jointly hereafter as The McKay.

In 1989, the State Board established a county land valuation commission in each county for the purpose of determining the value of land in the county. *See* IND.CODE ANN. § 6–1.1–4–13.6 (West 1989) (amended 1997). The Marion County Land Valuation Commission adopted the Marion County Land Valuation Order (which was subsequently approved by the State Board). *Id.* § 6–1.1–4–13.6(f). The Marion County Land Valuation Order provides acreage values for Apartment Land (the Apartment Land Schedule) and Commercial Land (the Commercial Land Schedule).[1] The schedules further classify land as primary, secondary and useable undeveloped. *See* IND.ADMIN.CODE

---

1. The relevant pages of the Land Order are Page 2 for the Apartment Land Schedule (Ex. L to Joint Ex. 1) and Page 25 for the Commercial Land Schedule (Ex. L to Joint Ex. 1). The maximum value for primary apartment land in Marion County set forth in the Apartment Land Schedule of the Land Order is $40,000 per acre—the equivalent of $.92 per square foot. The Commercial Land Schedule of the Land Order establishes values for the location of the Petitioner's land between a range of $5 to $10 per square foot for primary land and a range of $3.50 to $7.00 for secondary land.

In addition to establishing acreage values, the Apartment Land Schedule also sets forth specific criteria for which one of five categories the land should be valued under: Very Good, Good, Average, Fair and Poor. For example, the criteria for Very Good apartment land are:

> VERY GOOD: Extremely desirable secluded location with wooded, rolling terrain that has scenic features such as a natural or man-made lake. Area has excellent landscaping. There is easy access to major roads, schools and shopping area. Features include: more than 2 parking spaces per unit, carports and/or garages, outdoor recreational areas, swimming pool, tennis courts, elaborate club house with office, meeting rooms and athletic facilities including locker and shower area, a security entrance, good quality roads and sidewalks to all areas, and abundant exterior lighting.

The criteria for Fair apartment land are:

> FAIR: Adequate. Declining in desirability with limited access to main roads, shopping and schools. Features include: minimal parking, and sidewalks with scant lighting throughout area, may have small clubhouse and has few recreational facilities.

Similar criteria are established for Good, Average and Poor apartment land.

tit. 50, r. 2.1–4–2 (1992) (recodified in present form at *id.* r. 2.2–4–1 (1996)). These acreage values are as follows:

### APARTMENT LAND

| Acreage Values: | Primary | Secondary | Undeveloped Useable |
|---|---|---|---|
| Very Good | 40000 | 28000 | 12000 |
| VeryGood/Good | 35000 | 24500 | 10500 |
| Good | 30000 | 21000 | 9000 |
| Good/Average | 27500 | 19250 | 8250 |
| Average | 25000 | 17500 | 7500 |
| Average/Fair | 22500 | 15750 | 6750 |
| Fair | 20000 | 14000 | 6000 |
| Fair/Poor | 15000 | 10500 | 4500 |
| Poor | 10000 | 7000 | 3000 |

The McKay was valued during the 1989 general reassessment. See IND.CODE ANN. § 6–1.1–4–4 (West Supp.1997). In contrast to the above values, the Final Assessment Determination issued by the State Board fixed the assessed value of the McKay land at $10 per square foot by applying the Commercial Land Schedule (the only classification under the Land Valuation Order with values that high). The Center Township Assessor classified the land under the building and the parking lot as primary and assigned a value of $10 per square foot. (Joint Ex. 1, Item 5). This resulted in an assessment of $84,825 (for .195 acres of land) or $435,600 per acre. IHP challenged this valuation to the Marion County Board of Review (BOR). IHP argued that the Apartment Land Schedule of the Land Order, which values apartment land on an acreage basis, should have been used. The BOR denied IHP's claim and maintained the valuation based on $10 per square foot.

Unsatisfied with this result, IHP filed a Form 131 Petition for Review of Assessment with the State Board.[2] Following a hearing on March 26, 1993, the State Board affirmed the use of the commercial property section of the Land Order. This maintained the valuation at $10 per square foot. However, the State Board did allow a 10% negative influence factor based on the fact that The McKay is located in an Historic District. This resulted in a reduction of IHP's overall tax. IHP then timely filed an original tax appeal in this Court. A trial was held on May 8, 1996, followed by oral argument on November 20, 1996. Additional facts will be supplied as necessary.

**2.** *See* IND.CODE ANN § 6–1.1–15–3 (West Supp. 1997).

## STANDARD OF REVIEW

It is well established that this Court will review a final determination of the State Board to ascertain whether that determination is in violation of any constitutional, statutory or legal principle. *Amax, Inc. v. State Bd. of Tax Comm'rs*, 552 N.E.2d 850, 852 (Ind.Tax Ct.1990). The taxpayer bears the burden of demonstrating that the State Board's final determination is improper. *See Componx, Inc. v. State Bd. of Tax Comm'rs*, 683 N.E.2d 1372, 1374 (Ind.Tax Ct.1997); *see also North Park Cinemas, Inc. v. State Bd. of Tax Comm'rs*, 689 N.E.2d 765, 767 (Ind. Tax Ct.1997) (party appealing State Board decision bears the burden of proof before this Court). A final determination will be reversed where it is not supported by substantial evidence, where it is an abuse of discretion or where the determination is arbitrary and capricious. *Wareco Enters. Inc. v. State Bd. of Tax Comm'rs.*, 689 N.E.2d 1299, 1300 (Ind.Tax Ct.1997).

## DISCUSSION AND ANALYSIS

The State Board maintains that it may use the Commercial Land Schedule to value The McKay land. At trial, Kenneth Daly, the State Board hearing officer, testified that he did not use the Apartment Land Schedule of the Land Order but used instead the Commercial Land Schedule to value The McKay. (Tr. at 20). Among the reasons Mr. Daly cited for his use of the Commercial Land Schedule rather than the Apartment Land Schedule were the fact that: The McKay lacked amenities listed in the apartment land section such as "a pool, wooded rolling hills and things of that nature"; The McKay was on a small parcel of land; The McKay was located downtown and in an urban area; The McKay was on platted land; The McKay was a single building. (Tr. at 21–22). At oral argument, counsel for the State Board provided another reason for not using the Apartment Land Schedule. For the first time in the proceedings, the State Board contended that any apartment land that is less than one acre in size should be valued using the Commercial Land Schedule. (Tr. at 32–33).[3]

**3.** On December 30, 1997 IHP moved to submit additional materials to rebut the State Board's

## THE STATE BOARD'S FINAL DETERMINATION IS CONTRARY TO LAW

### The Assessment Violates the Marion County Land Valuation Order

Assessing apartment land using commercial values flies in the face of the classification system set forth in the Marion County Land Valuation Order. Although the Marion County Land Valuation Order does not define it, the plain language of the classification "Apartment Land" makes it clear that it would apply to land upon which apartments have been constructed, such as The McKay land. To allow the State Board to do otherwise would render the Land Valuation Order meaningless. A contention that land being used for industrial purposes should be assessed using the rural residential schedule of the Land Valuation Order would never be allowed to stand. Neither should a contention that land upon which apartments have been constructed should be assessed using commercial values rather than apartment land values, when an apartment land category has been provided for *specifically* in the Land Valuation Order. For this reason, the Apartment Land schedule of the Marion County Land Valuation Order should be applied to The McKay land as a matter of law, resulting in a true tax value no greater than $40,000 per acre.

The State Board's argument to refute this position is uniquely unconvincing. Its contentions are three: 1) the Land Order must be applied as written, 2) "[a]ny challenge to values contained in the Land Order is being made by the wrong person at the wrong time in the process." (Resp. Br. at 13–14), and 3) it cites *Castello v. State Bd. of Tax Comm'rs,* 638 N.E.2d 1362, 1365 (Ind.Tax Ct.1994) for the proposition that "[t]he State Board is recognized as the State's assessing expert." (Resp. Br. at 5).

The State Board's first argument is somewhat puzzling. It would seem that applying the Land Order as written would support IHP's argument. Land Orders are administrative rules subject to the same rules of construction as statutes. *Poracky v. State Bd. of Tax Comm'rs,* 635 N.E.2d 235, 236 (Ind.Tax Ct.1994). In construing a statute, this Court's foremost goal is to determine and effect legislative intent. *State ex rel. Camden v. Gibson Circuit Court,* 640 N.E.2d 696, 700 (Ind.1994). Furthermore, Indiana law is clear that a court may construe and interpret a statute only if it is ambiguous. *Shoup Buses, Inc. v. Department of State Revenue,* 635 N.E.2d 1165, 1167–68 (Ind.Tax Ct.1994). The Indiana Supreme Court consistently has held that there is no need to apply the rules of statutory construction when a statute is unambiguous. *Mitchell v. State,* 659 N.E.2d 112, 114–15 (Ind.1995). A clear and unambiguous statute must be read to "mean what it plainly expresses, and its plain and obvious meaning may not be enlarged or restricted." *Department of State Revenue v. Horizon Bancorp,* 644 N.E.2d 870, 872 (Ind.1994). The "words and phrases" of such a statute "shall be taken in their plain, ordinary, and usual sense." *State Bd. of Tax Comm'rs v. Jewell Grain Co.,* 556 N.E.2d 920, 921 (Ind.1990); IND.CODE ANN. § 1–1–4–1(1) (West Supp.1997). Following these rules of statutory construction, the State Board is required to value The McKay land using the Apartment Land Schedule. In this case, there is no ambiguity. Using the Commercial Land Schedule to value apartment land violates the plain language of the Marion County Land Order. The State Board's contention that the Land Order as written requires this assessment is meritless.

Second, IHP is not challenging the values underlying the Land Order. It is arguing that the Land Order has been applied incorrectly. Therefore, the State Board's second

one acre rule. At no time prior to oral argument was this "bright line" ever mentioned. It is not in any regulation. It is not in the Marion County Land Order. It was not placed in evidence or mentioned in the proceedings at the administrative level as a long-standing practice. It was not placed in evidence or mentioned at trial before this Court. It was not mentioned in the briefs filed with this Court. IHP's filing was in re-

sponse. IHP argues that it is entitled to an opportunity to respond to new arguments presented by the State Board before this Court. *See Wirth v. State Bd. of Tax Comm'rs,* 613 N.E.2d 874, 879–80 (Ind.Tax Ct.1993). Because the Court does not reach the evidentiary issues in this case, the Court will not rule on either IHP's motion or the State Board's response thereto.

argument misses the mark. But even if this were one of IHP's contentions, the State Board's position was found unconstitutional in *Zakutansky v. State Board of Tax Commissioners*, 691 N.E.2d 1365 (Ind.Tax Ct.1998). In *Zakutansky*, a taxpayer challenged the values in the Land Order that applied to his property. His claim was that his land was not being valued uniformly and equally with others in his neighborhood. The State Board argued that once a Land Order is duly promulgated, it is inviolate. Therefore, according to the State Board, taxpayers cannot challenge the values of a Land Order, but only whether a Land Order is being correctly applied to their property (which is the precise challenge here). This Court rejected the State Board's position and allowed Zakutansky to challenge the values of the Land Order as it applied to him.

Finally, offering up the bromide that the State Board is Indiana's "assessing expert" does little to excuse its misapplication of the Marion County Land Order in this case. The taxpayers of Indiana deserve more from the State Board than sloganistic announcements of its expertise, followed by a naked assessment. *Cf. United States v. Janis*, 428 U.S. 433, 96 S.Ct. 3021, 49 L.Ed.2d 1046 (1976). The State Board has presented no expertise here. Expertise is demonstrated by expert action, not a will to power.

### The Assessment Violates Article X, § 1, of the Indiana Constitution

▮▮▮▮ Article X, § 1, of the Indiana Constitution provides:

> The General Assembly shall provide, by law, for a uniform and equal rate of property assessment and taxation and shall prescribe regulations to secure a just valuation for taxation of all property, both real and personal.

This provision has long been held to require: (1) uniformity and equality in assessment, (2) uniformity and equality as to rate of taxation, and (3) a just valuation for taxation of all property. *Wright v. Steers*, 242 Ind. 582, 179 N.E.2d 721 (1962), *Fesler v. Bosson* 189 Ind. 484, 128 N.E. 145 (1920). The purpose of these constitutional requirements is to distribute the burden of taxation upon principles of uniformity, equality, and justice. *Finney v. Johnson*, 242 Ind. 465, 179 N.E.2d

718 (1962); *Bright v. McCullough*, 27 Ind. 223 (1866).

The requirement that the legislature adhere to these principles of uniformity, equality, and just valuation in property tax matters was reaffirmed by the Indiana Supreme Court in *Boehm v. Town of St. John*, 675 N.E.2d 318 (Ind.1996). Although holding that Article X, § 1, does not require the use of a fair market value system of property assessment and taxation, the Court reaffirmed that the Indiana Constitution "[s]eek[s] to ensure that each taxpayer's property wealth bear its proportion of the overall property tax burden" and "requires that our property tax system achieve substantially uniform and equal rates of property assessment and taxation...." *Id.* at 327. Thus, this holding represents the clearest affirmation of the continuing vitality of the Constitution's requirement of uniform and equal assessments. *See also Town of St. John v. State Bd. of Tax Comm'rs*, 690 N.E.2d 370, 374 (Ind.Tax Ct.1997), *petition for review filed*, Jan. 21, 1998.

Consistent with the principles discussed above, the Indiana courts have not hesitated to strike down provisions which have resulted in comparable property being assessed inconsistently in violation of Article X, § 1. In *Meridian Hills Country Club v. State Board of Commissioners*, 512 N.E.2d 911 (Ind.Tax Ct.1987), the land on which Meridian Hills' clubhouse was located was valued at $10,000 per acre while similarly situated land at two other Marion County country clubs was valued at $750 per acre. In discussing this issue, this Court noted that the regulations did provide some basis to classify the land occupied by clubhouses differently from other golf course land. The difference in assessment, however, resulted from the fact that the State Board had not employed the regulations in the same manner to all country clubs in Marion County. The Court stated that "[u]niformity and equality in tax burden do not occur unless identical property is assessed at the same tax value." 512 N.E.2d at 914 (quoting *State Bd. of Tax Comm'rs v. Lyon & Greenleaf Co.*, 172 Ind.App. 272, 359 N.E.2d 931, 935 (1977)). The Court therefore found that:

[I]nasmuch as the land upon which the clubhouse and other improvements are located at Hillcrest and CCI [i.e., other Marion County country clubs] was assessed at the same rate as was the golf course land [i.e., $750 per acre], the State Board has not assessed like property in a uniform and equal manner and hence the assessment of 6.5 acres at a base rate of $10,000 per acre is arbitrary and capricious.

512 N.E.2d at 914. Such disparate treatment of otherwise physically comparable property violated the Constitution's uniformity requirement.

Similarly, in *Harrington v. State Board of Tax Commissioners*, 525 N.E.2d 360 (Ind. Tax Ct.1988), the taxpayer's boat slips were assessed at $8 per square foot while other boat slips in Porter County were assessed at $100 per slip, $50 per slip, and in two cases were not assessed at all. The $8 per square foot assessment resulted in an assessed value of over $5,000 for a facility with two boat slips. This assessment was thus approximately 25 to 50 times greater than the assessment of other property of the same classification. In finding for the taxpayer, the Court stated that "[t]he State Board's determination of the value of the concrete dock is arbitrary and capricious because it is inconsistent with assessments of like property...." 525 N.E.2d at 363.

 *Meridian Hills* and *Harrington* are part of a long line of cases establishing that the principles of uniformity and equality in assessment and taxation are violated when a taxpayer is assessed and taxed on a different basis as compared to taxpayers with substantially similar property.[4] Thus, when taxpayers hold substantially identical property, but are assessed differently, this Court has consistently held such assessments unconstitutional under Article X, § 1.

 In the present case, no evidence has been presented showing a physical or functional distinction between The McKay land and other land throughout Marion County upon which apartments have been constructed. However, it is abundantly clear that The McKay's apartment land is being assessed on a basis far different from other apartment complexes located elsewhere in Marion County and Center Township. The McKay's land is being assessed at a (presumably commercial) rate of $10.00 per square foot ($435,-600 per acre) while other apartment land is being assessed using the Apartment Land Schedule, as follows: Pike Township ($27,500 per acre), Warren Township ($30,000 per acre), Washington Township ($35,000 to $40,-000 per acre), and elsewhere in Center Township ($20,000 to $25,000 per acre).

Put bluntly, the State Board's treatment of IHP has been ad hoc. It appears from argument before the Court that the State Board does not like the way the Marion County Land Order applies in this particular case. Apartment land means precisely that—land with apartment buildings on it. So, in order to arrive at what it feels to be the correct assessment, the State Board has chosen to ignore the plain language of the Land Order. This will not do. The General Assembly enacted section 6–1.1–4–13.6 for a reason: Land Orders have the force of law and are to be complied with as long as the applied Land Order results in constitutional assessments.

---

4. *See also State Bd. of Tax Comm'rs v. Lyon & Greenleaf Co.*, 172 Ind.App. 272, 359 N.E.2d 931 (1977) (assessment of physically indistinguishable raw wheat at different values based on the identity of its owners held unconstitutional under Article X, § 1); *State Bd. of Tax Comm'rs v. Pioneer Hi–Bred Int'l, Inc.*, 477 N.E.2d 939 (Ind. Ct.App.1985) (same); *State Bd. of Tax Comm'rs v. Polygram Records, Inc.*, 487 N.E.2d 444 (Ind.Ct. App.1985), (under Article X, § 1, inventory of taxpayer engaged in the business of recording, promoting, and distributing musical tapes and records could not be assessed differently on those items than manufacturers that physically pressed the records); *Richmond Baking Co. v. Dep't of Treasury* (1939), 215 Ind. 110, 115, 18 N.E.2d 778, 781 (classification for taxation is not invalid when it rests on a reasonable basis of actual difference between those included and those excluded).

For an example from another jurisdiction, *see Paradise Valley Country Club v. State. Bd. of Equalization*, 748 P.2d 298 (Wyo.1988), (county assessor's commercial square-footage appraisal of one golf course, and an agricultural land basis appraisal for another golf course, resulted in the former's being valued nearly 100 times higher than the latter. "Because different classification and valuation methodology was applied to the [former property from the latter] ... the valuation is considered to have been made in a nonuniform manner; and the subject matter should be valued in the same manner as the [latter]." *Id.* at 304).

The State Board is bound by the law—it may not pick when to follow the law. The Court understands that it may well be that land located in the area of the McKay has commercial value aside from its value as apartment land. If, as the State Board has argued, The McKay land will be incorrectly valued by using the Apartment Land Schedule, then the State Board should amend the Land Order pursuant to those provisions of section 6–1.1–4–13.6 that allow for changes and amendment. Until such time, the disparity in these assessments of substantially similar property clearly violates the principles of uniformity and equality in assessment and taxation required under Article X, § 1, of the Indiana Constitution. Applying the Apartment Land Schedule to The McKay land is the only way to bring the assessment into compliance with Article X, § 1.

## CONCLUSION

Marion County has a Land Order that provides a maximum primary value of $40,000 per acre for apartment land; The McKay's land is apartment land; both suburban and urban apartment land has been valued based upon the criteria and values set forth on the Apartment Land Schedule. The McKay land should be valued using the same criteria.

It is more than a reasonable inference that the Apartment Land Schedule was created specifically to distinguish apartment land from all other types of land in Marion County. Nevertheless, the State Board has, without any rational basis (or authority) whatsoever, by its assessment of The McKay, created at least one more class of apartment land: a class of apartment land that is valued eleven times greater than the very best apartment land provided for in the Marion County Land Order. This is forbidden by our Constitution.

The State Board's use of the Commercial Land Schedule to value The McKay's land violates the Marion County Land Order. Because of this, it is both contrary to law and a violation of the constitutional and statutory requirements of uniformity and equality. The State Board's Final Determination is REVERSED, and this cause is REMAND-

ED for further action consistent with this opinion.