**STATE BOARD OF TAX COMMISSIONERS of the State of Indiana, and John M. Huie, Durwood S. Strang, and Gordon E. McIntyre, As Members of the State Board of Tax Commissioners, Defendants-Appellants,**

v.

**PIONEER HI-BRED INTERNATIONAL, INC., Plaintiff-Appellee.**

**No. 4–884A239.[1]**

Court of Appeals of Indiana, First District.

May 16, 1985.

---

1. This case was diverted to the First District by order of the Chief Judge.

Linley E. Pearson, Atty. Gen., Ted J. Holaday, Deputy Atty. Gen., Indianapolis, for defendants-appellants.

Leonard J. Betley, Barton T. Sprunger, Ice Miller Donadio & Ryan, Indianapolis, for plaintiff-appellee.

RATLIFF, Presiding Judge.

## STATEMENT OF THE CASE

The State Board of Tax Commissioners (Board) appeals the setting aside of its administrative ruling assessing Pioneer Hi-Bred International's (Pioneer) personal property at a higher rate. We affirm.

## FACTS

Pioneer is engaged in the production and sale of various types of seed grain. The present controversy arose out of the Board's valuation for tax purposes of grain produced and held as inventory at various locations throughout Indiana. Pursuant to Regulation 16, Pioneer's seed grain was valued at two different amounts depending on whether it was stored at Pioneer's own facility or was in the hands of Pioneer's sales representatives.

Pioneer is unique in its method of production and marketing. At Pioneer's facilities in Indiana the grain is planted, harvested and conditioned. Unlike any other producer of agricultural products, Pioneer also assumes the role of retailing by distributing its seed grain to farmer-sales repre-

sentatives throughout Indiana to be sold in the farmer's area to Pioneer's customers. The sales representatives receive the seed and sell what they can. Title remains in Pioneer until it passes to a buyer. All seed unsold after the planting season is returned to Pioneer.

In 1981, Pioneer filed its Tangible Personal Property Tax Returns with the specific township assessors wherever its inventory was located. The value of the seed reported by Pioneer was the same regardless of whether such inventory was in the hands of its sales representatives ready for retail or being stored at a production facility. The Board rejected Pioneer's valuation on the basis of Regulation 16 which requires a producer who assumes the role of a retailer to value its inventory located at the retail level of trade differently than inventory not ready for retail. The Board assessed inventory located at Pioneer's facilities based on the cost per books method of valuation as originally reported. Each bag of seed corn, alfalfa, sorghum and forage was valued at $18.33, $46.73, $7.77, $45.99 respectively. However, the Board valued the various seed in the hands of Pioneer's sale representatives at a higher rate according to the method described in Regulation 16. Identical units of seed corn, alfalfa, sorghum, and forage at the retail level of trade was valued at $26.71, $69.54, $14.64 and $67.87 respectively. This assessment by the Board was appealed to Tipton Circuit Court which determined that such disproportionate valuation of identical property was contrary to law and granted Pioneer's motion for summary judgment.

## ISSUE

Our review is limited to one narrow issue. Is the application of Regulation 16 to Pioneer contrary to law?

## DISCUSSION AND DECISION

■ Because this is an appeal from a trial court's review of an administrative determination, the Board argues the trial judge failed to properly defer to the decision below. It is true that the judiciary must give deference to an administrative agency's decision, especially where the agency consists of a fact finding body of experts. *Public Service Commission v. City of Indianapolis* (1956), 235 Ind. 70, 131 N.E.2d 308. Our standard of review however, does authorize this court to set aside an administrative decision which is unlawful. *Peden v. Board of Review of Cass County* (1935), 208 Ind. 215, 195 N.E. 87; *State Board of Tax Commissioners v. Valparaiso Golf Club, Inc.* (1975), 164 Ind. App. 687, 330 N.E.2d 394. The legality of the Board's decision is precisely the issue presented in this case. The trial court determined that application of Regulation 16 to Pioneer was contrary to this court's interpretation of the constitutional and statutory restrictions placed on the Board. Interpretation of the constitution and statutes are functions unambiguously within the authority of the judiciary. *State ex rel. Mass Transportation Authority v. Indiana Revenue Board* (1970), 146 Ind.App. 334, 335–37, 255 N.E.2d 833, 834–35; *Lake County Beverage Company, Inc. v. 21st Amendment, Inc.* (1982), Ind.App., 441 N.E.2d 1008.

Based on Regulation 16, Pioneer was assessed different amounts of tax liability for identical property. The property was distinguished for tax purposes on the basis of its level of trade.[2] Because Pioneer produced *and* retailed the various types of seed through its farmer-salesmen, the seed already distributed was valued at a higher rate than identical seed that remained in Pioneer's possession. The Board's argu-

2. The portion of Regulation 16 which applies to the present case can be found in 50 I.A.C. 4.1–3–2. The regulation, in pertinent part, states that manufacturers or processors who assume the role of retailer must value inventory at the retail level as purchased inventory from the manufacturing or processing plant. The value must include cost of materials, labor, manufacturing expenses, operating expenses and intracompany profit. Each of these costs is then defined in the regulation.

ment supporting its assessment is that seed at the retail level of trade should be valued equally whether it is owned by a retailer who purchased it from a producer or by a producer assuming the role of retailer. The inequality of tax liability assessed against the same property of a single taxpayer is justified because equality of assessment occurs among different taxpayers when the level of trade provision is applied. The Board argues that a traditional retailer should pay the same amount of tax on inventory that Pioneer pays on its inventory at the retail level of trade. It concludes that the different valuation methods are necessary to achieve this result due to the economic reality that it costs Pioneer a different amount to retail its seed than it would a traditional retailer. Different methods of valuation are permissible to achieve a just and uniform valuation. *Clark v. Vandalia R. Co.* (1909), 172 Ind. 409, 86 N.E. 851.

However, nothing in the record substantiates the Board's argument that application of Regulation 16 resulted in uniformity between Pioneer and its retail competitors. In oral argument, the Board stated that the retail level of trade provisions in Regulation 16 are based on a general perception that as goods travel from producer, to dealer, to retailer they become more valuable. While this general perception may have a theoretical justification, no evidence was introduced at trial revealing what the valuation of similar inventory owned by a retailer would be. Neither this court nor the trial court could compare the tax liability of Pioneer and that of its retail competitors. Furthermore, the Board introduced no other facts or data showing equality and uniformity between Pioneer and other retailers resulted from application of Regulation 16. Consequently, we reject the Board's contention that Regulation 16 leads to uniformity and equality among taxpayers.

We now turn to the question of whether the disproportionate tax liability assessed against Pioneer is legally permissible. The Indiana Constitution states:

"The General Assembly shall provide, by law, for a uniform and equal rate of property assessment and taxation and shall prescribe regulations to secure a just valuation for taxation of all property, both real and personal...."

Ind. Const. Art. 10 § 1. "This provision requires: (1) uniformity and equality in assessment; (2) uniformity and equality as to rate of taxation; and (3) a just valuation for taxation of all property." *Indiana State Board of Tax Commissioners v. Lyon & Greenleaf Co.* (1977), 172 Ind.App. 272, 359 N.E.2d 931, *trans. denied.* In *Lyon & Greenleaf* the appellee operated a warehouse which stored raw wheat belonging to farmers, other elevators, and itself. The Board valued the farmers wheat at 60 cents per bushel which it had determined was the reasonable value of the commodity for the tax year in question. However, that same year the Board promulgated a regulation requiring wheat owned by a dealer to be valued at its actual cost or replacement value whichever is lower. The court held such a distinction based on mere ownership resulting in identical property being assessed at a higher rate was neither uniform and equal nor a just valuation for all property.

"The Board has not attempted to show that its method of classification and valuation is required to achieve a just valuation upon all property, but only argues that its basis of valuation was uniform. It asserts that actual cost was used as the basis of assessment for all wheat and that the difference in value results from a difference in cost to the respective owners. The Constitution of Indiana does not require a uniform method of valuation, but rather such regulations as shall secure a just valuation for taxation of *all* property. [Original emphasis.] [Citation omitted.] While it is true that the relevant statutes [footnote omitted] recognize cost as a factor to consider in arriving at a just valuation, such factor is not a sufficient condition to satisfy the constitutional requirements. Thus, a method of cost valuation which does not

move towards the goal of securing a just valuation of all property on the principles of uniformity and equality cannot withstand constitutional attack.

"In the case at bar, the Board attempted to satisfy the constitutional requirements by adopting Regulation No. 16. Section 6.1 of such regulation recognized that certain types of tangible personal property, *e.g.*, agricultural commodities, have a readily ascertainable value and permitted the Board to determine the 'true cash value' of such property and to publish annual lists of the appropriate unit valuations for tax purposes. Bulletin No. 9 listed such valuations for the year 1969, and wheat was valued at 60 cents per bushel.

"However, Bulletin No. 9 required a dealer or manufacturer to value its wheat as inventory pursuant to Part V of Amended Regulation No. 16.

"The requirement resulted in the anomalous situation in which appellee was assessed at a higher rate than the farmers whose wheat it stored, and which wheat was physically indistinguishable and commingled in common storage bins with its own.

"The result of Bulletin No. 9 is to place an artificial distinction upon the value of fungible raw wheat. The method does not result in uniformity and equality in assessment nor in a just valuation for all property. The resulting inequities of a system which places differing values on a fungible commodity commingled in the same storage facilities are too great to warrant a valuation under such method. *Uniformity and equality in tax burden do not occur unless identical property is assessed at the same tax value.* [Emphasis supplied.]"

*Lyon & Greenleaf* at 277–78, 359 N.E.2d at 934–35.

*Lyon & Greenleaf* is indistinguishable from the case at bar. In both cases the Board has failed to show the classification of the same property which yields disproportionate tax liability is required to achieve a just valuation of all property.

Inventory stored at Pioneer's facilities is distinguished from the same inventory in the hands of Pioneer's sales representatives. Such a distinction is probably more artificial than in *Lyon & Greenleaf.* In this case, not only is identical property valued differently but the same owner of identical property is taxed differently. We therefore conclude that the Board's higher valuation of Pioneer's seed grain at the retail level of trade was impermissible and the trial court properly set it aside.

Accordingly, the trial court's judgment is affirmed.

NEAL and ROBERTSON, JJ., concur.