**STATE BOARD OF TAX COMMIS-
SIONERS, Appellant (Defendant
Below),**

v.

**POLYGRAM RECORDS, INC., Appellee
(Plaintiff Below).**

No. 4–285 A 27 [1].

Court of Appeals of Indiana,
First District.

Oct. 22, 1985.

Publication ordered Jan. 10, 1986.

Linley E. Pearson, Atty. Gen., Dan S. Larue, Deputy Atty. Gen., Indianapolis, for appellant.

Jeffrey S. Rasley, William B. Stephan, James Dorr Babcock, P.C., Indianapolis, for appellee.

ROBERTSON, Judge.

The defendant-appellant State Board of Tax Commissioners (Board) is appealing from the granting of a summary judgment requiring a reassessment at a lower amount of the business inventory of the plaintiff-appellee PolyGram Records, Inc. (PolyGram).

We affirm.

The first of the two issues raised by the Board asserts error in the trial court's ruling that PolyGram's property tax assessment was unlawful in that royalties are not to be included in the assessment.

Facts relating to the first issue are that PolyGram, a New York corporation, produces, promotes, and distributes recorded music in the form of tapes and records, and

1. Diverted from the Fourth District by direction of the Chief Judge.

has a distribution depot and return center for these products in Beech Grove, Indiana. Record label companies contract with the artist who makes a master recording. The record label company is solely responsible for any royalty payments to the artist. PolyGram contracts with the record label companies who provide PolyGram with the master copy. PolyGram subcontracts with record pressing companies for manufacture of the record. PolyGram then distributes the recordings to retailers and also takes back the recordings if they are not sold. Title to the recordings may, or may not, be in PolyGram. PolyGram is compensated by retaining a percentage of the wholesale price with the remainder going to the record label companies who, in turn, use the funds for expenses, including royalties, or profit.

PolyGram's business inventory assessment was increased by 127% to cover the value of royalties. The figure of 127% represents the average amount paid in royalties to recording artists over the standard value of the recordings. Standard value includes manufacturing, shipping, and distribution costs incurred in the production and distribution of the recordings prior to the shipment to the retailer. The Board argues that 50 I.A.C. 4.1–3–2(A)(6)[2] allows the inclusion of royalties.

The facts show that PolyGram is in no way involved with the contracts or agreements between label companies and artists respecting royalty agreements and that if a recording is in PolyGram's inventory no royalty has accrued because there has been no sale at retail, the event which causes a royalty to become due to the artist. PolyGram is in no different position, according to the record, than an Indiana located record presser, *i.e.*, the manufacturer, of recordings, where royalty values are not assessed. We believe the situation is sufficiently similar to the seed corn in *State Bd. of Tax Com'rs. v. Pioneer Hi-Bred*, (1985) Ind. App., 477 N.E.2d 939, and the stored wheat in *Ind. St. Bd. of Tax Com'rs. v. Lyon & Greenleaf Co.*, (1977) 172 Ind.App. 272, 359 N.E.2d 931, that these cases control the PolyGram inventory because the Board has created an artificial distinction which results in an assessment which is not uniform or results in a just valuation. As a result, the PolyGram assessment contravenes Ind. Const. Art 10, § 1.[3]

Having found that the trial court correctly found for PolyGram because the assessment violates Ind. Const. Art. 10, § 1, there is no need to discuss the other sub-arguments of the Board's first issue.

■ The other issue raised by the Board questions the trial court's ruling that the Board unlawfully limited PolyGram's deduction for abnormal obsolescence[4] of inventory. The key findings of the trial court relating to this issue can be summarized as being that PolyGram used a methodology to determine abnormal obsolescence which is standard within the record industry; that methodology was explained and documented to the Board; that the Board did not present evidence to show or explain how they reached the allowable abnormal obsolescence deductions; and,

---

**2.** Cost Per Books—Except as otherwise provided in this regulation [50 IAC 4.1], the cost of inventory as recorded on the regular books and records of the taxpayer on the assessment date must be reported on the personal property tax return of the taxpayer. If a taxpayer uses the lower of the cost or market for valuing inventory for book accounting purposes, this method is allowable for Indiana property tax purposes. (A) Mandatory Adjustments—If the cost per books of the inventory reported by the taxpayer does not include the following items, such cost must be adjusted before reflecting any valuation adjustments or exemptions:

\* \* \* \* \* \*

(6) Royalties, Editorial, License or Copyright Fees—If the cost per books of inventory excludes any royalties, editorial costs, license or copyright fees, an adjustment increasing such cost must be made for reporting purposes under this regulation [50 IAC 4.1] before any valuation adjustments will be allowable pertaining to that inventory. If the expenditure or charge is contingent upon the sale of an article, such expenditure or charge shall be deemed to be indirectly incurred.

**3.** The Board does not advocate a level of trade theory in this appeal as they did in *Pioneer*.

**4.** Regulation 16, Rule 7, § 1(c) defines "abnormal obsolescence" as, among other things, "obsolescence which occurs as a result of factors over which the taxpayer has no control and is unanticipated, unexpected, and cannot reason-

PolyGram's system for determining abnormal obsolescence comports with the Board's regulations.

We are of the opinion that the trial court's ruling is not reversible error for the reason that it is properly premised upon the proposition that the Board's initial determination of abnormal obsolescence lacked a substantial evidentiary basis. Such a lack of a substantial evidentiary basis is grounds for reversal. *Bd. of Tr. P.E.R.F. v. Baughman,* (1983) Ind.App., 450 N.E.2d 95.

Judgment affirmed.

RATLIFF, P.J., concurs.

NEAL, J., concurs.

ably be foreseen by a prudent businessman prior to the occurrence."