**INLAND CONTAINER CORPORATION,**
Petitioner,

v.

**STATE BOARD OF TAX COMMISSIONERS,**
Respondent.

**No. 49T10–9609–TA–109.**

Tax Court of Indiana.

Oct. 1, 2001.

Larry J. Stroble, Michael Rosiello, John T. Bailey, Barnes & Thornburg, Indianapolis, IN, Attorneys for Petitioner.

Steve Carter, Attorney General of Indiana, David A. Arthur, Deputy Attorney General, Indianapolis, IN, Attorneys for Respondent.

FISHER, J.

The Petitioner, Inland Container Corporation (Inland), appeals the final determination of the State Board of Tax Commissioners (State Board) denying it a resource recovery system (RRS)[1] deduction for the

---

1. A resource recovery system (RRS) is "tangible property directly used to dispose of solid waste or hazardous waste by converting it into energy or other useful products." IND. CODE § 6–1.1–12–28.5(a) (2000).

March 1, 1994, assessment date. Inland moved for summary judgment, and the State Board replied and asked that summary judgment instead be granted in its favor. The Court finds the following issue dispositive in this case: whether the denial of the RRS deduction for Inland's certified RRS results in nonuniform and unequal taxation of substantially similar property in violation of Article 10, § 1 of the Indiana Constitution.[2]

For the reasons stated below, the Court GRANTS summary judgment in favor of Inland and DENIES the State Board's cross motion for summary judgment.

### FACTS AND PROCEDURAL HISTORY

The facts of this case are undisputed. Inland manufactures corrugated fiber shipping containers. Inland owns and operates Newport Mill, which is located in Vermillion County, Indiana. Newport Mill is a facility that disposes of waste materials by converting them into recycled paper.

On March 24, 1994, Inland filed an application with the Indiana Department of Environmental Management (IDEM) to request that property at the Newport Mill be certified as an RRS under Indiana Code § 6–1.1–12–28.5. On April 29, 1994, IDEM

certified that Inland's Newport Mill contained an RRS that converted solid waste into useful products.

In June 1994, Inland filed a Form RRS–1, Claim for Deduction of Assessed Valuation Applicable to Resource Recovery System, with the Vermillion County Auditor. Inland claimed the RRS deduction for its personal property in the amount of $6,298,018.[3] The county assessor approved the Form RRS–1, and the auditor sent Inland a tax statement, which included the RRS deduction,[4] due by May 10, 1995. Inland paid those taxes on May 10, 1995.

Thereafter, the legislature amended the RRS deduction statute, Indiana Code § 6–1.1–12–28.5, with an emergency effective date of May 1, 1995. The amendment provided that the RRS deduction would only be available for systems certified for the 1993 assessment year or earlier, and it phased out the deduction entirely after the 1997 assessment year.[5] IND.CODE § 6–1.1–12–28.5 (2000); see also P.L 25–1995 § 15; *Winski Bros., Inc. v. Bayh*, 679 N.E.2d 912, 913 (Ind.Ct.App.1997), *trans. denied* (citing P.L. 25–1995, § 15). This 1995 amendment also stated that any RRS that was assessed and first deducted in the 1994 assessment year could not receive the deduction for property taxes due and pay-

---

**2.** Inland also argued that the State Board's denial of its RRS deduction was improper because it was based upon a statute that violated Article 1, § 23 of the Indiana Constitution and the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. (Pet'r Summary Judgment Br. at 1–2.) Because this Court finds that the RRS deduction statute was in violation of Article 10, § 1 of the Indiana Constitution, the Court need not address these other issues. *See infra.*

**3.** This $6,298,018 RRS deduction is ninety-five percent of the 1994 assessed value of Inland's RRS property, which was $6,629,493. *See* I.C. § 6–1.1–12–28.5 (stating

that RRS deduction is ninety-five percent of assessed value of the RRS).

**4.** The tax statement listed the deduction as $6,298,020.

**5.** The deduction from the assessed value of the system was phased out as follows:
(1) ninety-five percent (95%) for the 1994 assessment year;
(2) ninety percent (90%) for the 1995 assessment year;
(3) seventy-five percent (75%) for the 1996 assessment year; and
(4) sixty percent (60%) for the 1997 assessment year.
I.C. § 6–1.1–12–28.5(d).

able in 1995 or later, I.C. § 6–1.1–12–28.5(d); *see also Winski Bros.*, 679 N.E.2d at 913, but rather could claim a deduction for the 1994 assessment year for "new manufacturing equipment" under Indiana Code § 6–1.1–12.1. *See* P.L. 25–1995 § 104(b).

On October 27, 1995, the Vermillion County Treasurer informed Inland that, pursuant to the amendment, it was revoking Inland's RRS deduction for the 1994 assessment year. At that same time, the State Board notified Inland that, under Indiana Code § 6–1.1–12.1–5.5, Inland would get a deduction of $2,358,410 for the assessed value of "new manufacturing equipment." The treasurer mailed supplemental property tax statements to Inland for the 1994 assessment year that did not include Inland's RRS deduction but did include the new manufacturing equipment abatement.

Inland did not pay the additional amount listed in the supplemental property tax statement. Instead, on November 9, 1995, Inland filed a Form 133, Petition for Correction of an Error, and a Form 130, Petition for Review of Assessment, with the Vermillion County Board of Review (BOR) appealing the denial of the RRS deduction for the 1994 assessment year. Inland argued that the county had, in its supplemental tax statement, erroneously assessed Inland's property at $3,939,610 [6] (which reflected the denial of the $6,298,020 RRS deduction less the $2,358,410 abatement). Inland asserted that the property should be assessed at $331,475 (before any abatements).[7] On December 22, 1995, the BOR denied Inland's appeal and stated that the assessment was without error because "[Inland's] abatement [was] correct pursuant to [Indiana Code § ] 6–1.1 12.1–5.5" and because "the resource recovery was repealed by the legislative session in 1995." (State Bd. Tr., Ex. B.)

On January 24, 1996, Inland filed a Form 131 Petition for Review challenging the BOR's denial of its RRS deduction for the 1994 assessment year. Inland submitted written evidence and a supporting brief in lieu of a State Board administrative hearing. In its Final Determination, issued August 30, 1996, the State Board recognized that the RRS statute created a distinction among taxpayers based on the certification date of RRS property but denied Inland's RRS deduction for the 1994 assessment year.

Inland filed this original tax appeal on September 11, 1996. On March 10, 1997, Inland filed a motion for summary judgment. On April 25, 1997, the Department filed its response opposing the summary judgment motion and asked the Court to enter summary judgment in its favor.[8] The Court heard oral arguments from the parties and took the matter under advisement. Additional facts will be supplied as needed.

---

**6.** Apparently in error, the supplemental tax statement identified the assessed value at $939,610. (*See* Pet'r Ex. F.) However, other copies of the supplemental tax statement included in the exhibits reflect the $3,939,610 after someone wrote in a "3." (*See* Pet'r Item II, Pet'r Exs. 1, 6; State Bd. Tr., Exs. A–1, A–2, C, E.) The parties do not raise this as an issue and appear to be in agreement that the assessed value was $3,939,610.

**7.** This $331,475 represents the five percent that would remain from the RRS property value of $6,629,493 after the ninety-five percent RRS deduction of $6,298,018 would be removed.

**8.** Pursuant to Indiana Trial Rule 56(B), the Court treats the State Board's request as a cross-motion for summary judgment. *Salin Bancshares, Inc. v. Indiana Dep't of State Revenue*, 744 N.E.2d 588, 591 n. 6 (Ind. Tax Ct.2000).

## ANALYSIS AND OPINION

### Standard of Review

 The Court gives great deference to the State Board's final determinations when the State Board acts within the scope of its authority. *Wetzel Enters., Inc. v. State Bd. of Tax Comm'rs,* 694 N.E.2d 1259, 1261 (Ind. Tax Ct.1998). Accordingly, this Court reverses final determinations of the State Board only when those decisions are unsupported by substantial evidence, are arbitrary or capricious, constitute an abuse of discretion, or exceed statutory authority. *Id.* The taxpayer bears the burden of demonstrating the invalidity of the State Board's final determination. *Clark v. State Bd. of Tax Comm'rs,* 694 N.E.2d 1230, 1233 (Ind. Tax Ct.1998). Summary judgment is proper only when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. *See* Ind. Trial Rule 56(C). *See also W.H. Paige & Co. v. State Bd. of Tax Comm'rs,* 732 N.E.2d 269, 270 (Ind. Tax Ct.2000). Cross motions for summary judgment do not alter this standard. *W.H. Paige,* 732 N.E.2d at 270.

### Discussion

Inland argues that the amended RRS statute, Indiana Code § 6–1.1–12–28.5, which phased out the RRS deduction, is unconstitutional as applied to Inland. Specifically, Inland claims that the State Board's denial of the RRS deduction was improper because the RRS deduction statute was in violation of Article 10, § 1 of the Indiana Constitution[9] and resulted in nonuniform taxation of substantially similar property. (Pet'r Summary Judgment Br. at 1.) The State Board argues that the statutory amendment does not violate the state constitution. (Resp't Summary Judgment Br. at 1.)

### *RRS Deduction*

The RRS deduction statute, Indiana Code § 6–1.1–12–28.5, was first enacted in 1979 to encourage recycling of waste by providing a substantial property tax deduction—ninety-five percent of the assessed value of the RRS—on tangible personal property used to recycle waste into energy or some other "useful product." *Auburn Foundry, Inc. v. State Bd. of Tax Comm'rs,* 628 N.E.2d 1260, 1261, 1265 (Ind. Tax Ct.1994); *Winski Bros.,* 679 N.E.2d at 913 (citing P.L. 52–1979, § 2); I.C. § 6–1.1–12–28.5. IDEM was the agency responsible for determining whether a system or device qualified for the RRS deduction under Indiana Code § 6–1.1–12–28.5. IND.CODE § 6–1.1–12–35(b) (1994); *see also Auburn Foundry,* 628 N.E.2d at 1264. Upon receiving an RRS certification from IDEM, a taxpayer was then required to file a Form RRS–1 and the IDEM certification with the county auditor. I.C. § 6–1.1–12–35(a); *see also Auburn Foundry,* 628 N.E.2d at 1265. The Form RRS–1 was then passed to the assessor for verification of the assessed value of the certified RRS property. I.C. § 6–1.1–12–35(a); *Auburn Foundry,* 628 N.E.2d at 1265. Upon verification by the assessor, the auditor was required to allow the RRS deduction. I.C. § 6–1.1–12–35(a); *Auburn Foundry,* 628 N.E.2d at 1265. A taxpayer

---

9. Article 10, § 1 of the Indiana Constitution—the Property Taxation Clause—provides:

The General Assembly shall provide, by law, for a uniform and equal rate of property assessment and taxation and shall prescribe regulations to secure a just valuation for taxation of all property, both real and personal.

IND. CONST. Art. 10, § 1(a). This constitutional provision is also codified at Indiana Code § 6–1.1–2–2 ("All tangible property which is subject to assessment shall be assessed on a just valuation basis and in a uniform and equal manner.").

was required to go through this process each assessment year it desired to obtain the RRS deduction. I.C. § 6–1.1–12–35(a).

In 1994, there was no provision, other than certification from IDEM and filing a deduction form with county officials, that limited who could qualify for the RRS deduction. Thus, in 1994, when Inland obtained its RRS certification from IDEM and filed its Form RRS–1 with the county auditor, the RRS deduction statute simply stated:

\* \* \* \*

(b) Except as provided in subsection (c), the owner of a resource recovery system that processes solid waste or hazardous waste is entitled to have deducted annually from the assessed value of the system an amount equal to ninety-five percent (95%) of that assessed value.

I.C. § 6–1.1–12–28.5 (1994).

In 1995, the legislature amended the RRS deduction statute with an emergency effective date of May 1, 1995. The legislature stated that the amended RRS statute was applicable to property taxes due and payable after December 31, 1994. P.L. 25–1995 § 99(a). This amended RRS deduction statute stated, in pertinent part:

\* \* \*

(b) Except as provided in this section, the owner of a resource recovery system is entitled to an annual deduction in an amount equal to ninety-five percent (95%) of the assessed value of the system if:

(1) the system was certified by the department of environmental management for the 1993 assessment year or a prior year; and

(2) the owner filed a timely application for the deduction for the 1993 assessment year.

\* \* \*

(d) The certification of a resource recovery system by the department of environmental management for the 1993 as-

sessment year or a prior assessment year is valid through the 1997 assessment year so long as the property is used as a resource recovery system. If the property is no longer used for the purpose for which the property was used when the property was certified, the owner of the property shall notify the county auditor. However, the deduction from the assessed value of the system is:

(1) ninety-five percent (95%) for the 1994 assessment year;

(2) ninety percent (90%) for the 1995 assessment year;

(3) seventy-five percent (75%) for the 1996 assessment year; and

(4) sixty percent (60%) for the 1997 assessment year.

Notwithstanding this section as it existed before 1995, for the 1994 assessment year, the portion of any tangible property comprising a resource recovery system that was assessed and first deducted for the 1994 assessment year may not be deducted for property taxes first due and payable in 1995 or later.

(e) In order to qualify for a deduction under this section, the person who desires to claim the deduction must file an application with the county auditor after February 28 and before May 16 of the current assessment year unless the person has been granted an extension under IC 6–1.1–3–7. If the person has been granted an extension, the person must file the application after February 28 and before June 15 of the current assessment year. An application must be filed in each year for which the person desires to obtain the deduction. The application may be filed in person or by mail. If mailed, the mailing must be postmarked on or before the last day for filing. If the application is not filed before the applicable deadline under this subsection, the deduction is waived.

The application must be filed on a form prescribed by the state board of tax commissioners. The application for a resource recovery system deduction must include:

(1) a certification by the department of environmental management for the 1993 assessment year or a prior assessment year as described in subsection (d); or

(2) the certification by the department of environmental management for the 1993 assessment year as described in subsection (g).

Beginning with the 1995 assessment year a person must also file an itemized list of all property on which a deduction is claimed. The list must include the date of purchase of the property and the cost to acquire the property.

I.C. § 6–1.1–12–28.5(b),(d),(e). Thus, the amended statute limited who could qualify for the deduction. In other words, the amended statute only allowed those taxpayers who had their RRS certified in 1993 or before to be eligible for the phase out of the RRS deduction. I.C. § 6–1.1–12–28.5. As a result, any taxpayers with an RRS that was assessed and first deducted in the 1994 assessment year could not receive the deduction, despite the fact that the statute in effect at the time they received IDEM certification and filed their deduction forms with county officials stated that they would receive such a deduction. *Id.*

### *Article 10, § 1—The Property Taxation Clause*

Inland claims that the amended RRS deduction statute resulted in non-uniform and unequal taxation of Inland's property in violation of Article 10, § 1 of the Indiana Constitution because other taxpayers who had substantially identical property to Inland's were able to receive the RRS deduction on a phased out basis while Inland was denied the deduction.

(Pet'r Summary Judgment Br. at 11–21.) Specifically, Inland argues that because it followed the same course before the amendment of the RRS statute as other taxpayers with substantially similar property—by obtaining IDEM certification and by filing a Form RRS–1 with the county auditor—it should receive the same benefit of the phased out RRS deduction as did those other taxpayers with substantially similar property. (Pet'r Summary Judgment Br. at 21.) The State Board, however, argues that the RRS deduction statute is not reviewable under Article 10, § 1 because property tax deductions are legislative policy decisions that are not reviewable by the Court ("[deductions] are purely legislative prerogatives and choices with which the courts should not and need not interfere") and because they are not part of an assessment (" 'assessment' is what is found on the property record card, not on the tax bill"). (Resp't Summary Judgment Br. at 7, 10.)

### A. Applicability of Article 10, § 1 to the RRS Deduction Statute

 The State Board incorrectly argues that the RRS deduction statute is not reviewable under Article 10, § 1. The power of taxation may be a legislative function; however, the legislature does not have unfettered discretion in that power. *State ex rel. Lewis v. Smith,* 158 Ind. 543, 63 N.E. 25, 26 (1902), *reh'g denied.* The Indiana Constitution, including Article 10, § 1, contains some limitations on the legislature's authority to tax. *State ex rel. Lewis v. Smith,* 158 Ind. 543, 64 N.E. 18 (1902) (stating that Article 10, § 1 is a "curb upon the general assembly's authority"); *Smith,* 63 N.E. at 26 ("The judiciary can afford no redress against oppressive taxation, *so long as* the legislature, in imposing it, shall keep within the limits of legislative authority, and violate no express provision of the constitution.") (emphasis added); *Bielski v. Zorn,* 627 N.E.2d 880, 884–85 (Ind. Tax

Ct.1994) ("[T]he legislature is duty-bound to follow the requirements of Article 10, § 1[.]"). "What property shall be taxed, and how it shall be taxed, are legislative questions, *so long as* there is uniformity and equality of rate as to those of the same class; and the subjects and methods of taxation are legislative matters, and cannot be disturbed *so long as* the method prescribed is applicable alike to all within the prescribed class." *Davis v. Sexton,* 210 Ind. 138, 200 N.E. 233, 241 (1936) (emphasis supplied).

■ Article 10, § 1 does not provide immunity to legislative policy judgments from judicial oversight, "but rather establishes mandatory minimum requirements for our system of property assessment and taxation." *Boehm v. Town of St. John,* 675 N.E.2d 318, 324 (Ind.1996) (*St. John II* ). A taxpayer has the right to seek judicial review from an assessment when its underlying basis does not comport with his constitutional rights to a uniform and equal assessment. *Zakutansky v. State Bd. of Tax Comm'rs,* 691 N.E.2d 1365, 1368 (Ind. Tax Ct.1998). Thus, the RRS deduction is reviewable under Article 10, § 1.

■ Furthermore, the State Board incorrectly argues that a deduction is not part of an assessment. Indiana Code § 6–1.1–12–0.5 states that "[f]or each year that a deduction from the assessed value of tangible property is allowed, the assessed value remaining after the deduction is the basis for the taxation of the property." IND.CODE § 6–1.1–12–0.5 (2000). A deduction is a stage in arriving at the assessed value that is the basis for taxation. Accordingly, this Court will review Inland's claim that the RRS statute violates the Indiana Constitution.

### B. Standard of Review for an Indiana Constitutional Claim

■ The standard of review for alleged violations of the Indiana Constitution is well established. *State Bd. of Tax Comm'rs v. Town of St. John,* 702 N.E.2d 1034, 1037 (Ind.1998) (*St. John V*). Every statute comes before the Court clothed with the presumption of constitutionality until clearly overcome by a contrary showing. *Id.* The party challenging the constitutionality of the statute bears the burden of proof, and all doubts are resolved against that party. *Id.* "A statute is not unconstitutional simply because the court might consider it born of unwise, undesirable, or ineffectual policies." *St. John II,* 675 N.E.2d at 321. "The task of declaring a legislative enactment unconstitutional is at once both solemn and delicate, and, while the courts will not decline this responsibility, yet they approach such a duty in a spirit of profound caution and circumspection, and with a disposition to enforce the legislative will by resolving all ultimate reasonable doubts in its favor." *Smith,* 63 N.E. at 26.

### C. Article 10, § 1 as Applied to the RRS Deduction Statute

■ By amending the RRS deduction statute, the legislature created a classification based upon the date that a taxpayer first had its RRS certified by IDEM. To meet constitutional muster, this classification must be based upon differences naturally inhering within the RRS property. *See St. John V,* 702 N.E.2d at 1042.

■ Article 10, § 1 of the Indiana Constitution requires: "(1) uniformity and equality in assessment; (2) uniformity and equality as to rate of taxation; and (3) a just valuation for taxation of all property." *St. John II,* 675 N.E.2d at 326 (quoting *Fesler v. Bosson,* 189 Ind. 484, 128 N.E. 145, 147 (1920)); *State Bd. of Tax Comm'rs v. Pioneer Hi–Bred Int'l, Inc.,*

477 N.E.2d 939, 942 (Ind.Ct.App.1985), *trans. denied* (quoting *State Bd. of Tax Comm'rs v. Lyon & Greenleaf Co., Inc.*, 172 Ind.App. 272, 359 N.E.2d 931 (1977)); *Indianapolis Historic Partners v. State Bd. of Tax Comm'rs*, 694 N.E.2d 1224, 1228 (Ind. Tax Ct.1998); *Bielski*, 627 N.E.2d at 884. The purpose of these constitutional requirements is to distribute the burden of taxation upon the principles of uniformity, equality, and justice. *Florer v. Sheridan*, 137 Ind. 28, 36 N.E. 365, 369 (1894); *Davis*, 200 N.E. at 241; *Board of Comm'rs of Johnson County v. Johnson*, 173 Ind. 76, 89 N.E. 590, 595 (1909); *Lyon*, 359 N.E.2d at 934; *Indianapolis Historic Partners*, 694 N.E.2d at 1228.

The limitation upon the legislature that taxation be equal can be satisfied "when there is no discrimination as between taxpayers." *Smith*, 63 N.E. at 27. This includes the requirement that "assessments be consistent with similar property of the same classification." *Harrington v. State Bd. of Tax Comm'rs*, 525 N.E.2d 360, 361 (Ind. Tax Ct.1988) (citing IND. CONST., Art. 10, § 1); *see also GTE North Inc. v. State Bd. of Tax Comm'rs*, 634 N.E.2d 882, 886 (Ind. Tax Ct.1994). "[W]hen, for any reason, [taxation] becomes discriminative between individuals of the class taxed, and selects some for an exceptional burden, the tax is deprived of the necessary element of legal equality, and becomes inadmissible." *Smith*, 63 N.E. at 27 (quoting *Cooley, Tax'n*, 169). Thus, if the legislature creates a classification within a statute, that classification must not be arbitrary. *Lyon*, 359 N.E.2d at 934. Instead, the classification itself must be based upon reasons naturally inhering in the property or subject-matter of the legislation, so as to produce no distinction between members of the same class. *See St. John V*, 702 N.E.2d at 1042; *Johnson*, 89 N.E. at 593 (citations omitted); *Lyon*, 359 N.E.2d at 934 (citing *Smith*, 64 N.E. at 20).

In prior cases, Indiana Courts have found that provisions that result in substantially comparable property being taxed at different levels violated Article 10, § 1. *See e.g., State Bd. of Tax Comm'rs v. Polygram Records, Inc.*, 487 N.E.2d 444, 445 (Ind.Ct.App.1985) (inclusion of royalties in the business inventory assessment of the taxpayer, who was not involved with royalties, created an "artificial distinction" that resulted in an assessment which was not uniform and did not result in a just valuation); *Pioneer Hi-Bred*, 477 N.E.2d at 943 (finding that the State Board "failed to show the classification of the same property [seed grain in the hands of sales representatives versus seed grain stored at a production facility] which yields disproportionate tax liability is required to achieve a just valuation of all property"); *Lyon*, 359 N.E.2d at 934–35 (concluding that method of valuation of physical indistinguishable wheat using classification based upon identity of raw wheat's owner created an artificial distinction upon the value of wheat that violated Article 10, § 1); *Harrington*, 525 N.E.2d at 361, 363 (finding State Board's determination of value of concrete dock was inconsistent with assessment of similar property of same classification); *Meridian Hills Country Club v. State Bd. of Tax Comm'rs*, 512 N.E.2d 911, 914 (Ind. Tax Ct.1987) (assessment of a golf course's land that contained a clubhouse at $10,000 per acre while other similarly situated golf course's clubhouse land was assessed at $750 per acre). *But see Johnson*, 89 N.E. at 596 (holding that classification of banks was permissible where practical effect is to place the classes on same footing in tax result); *Smith*, 158 Ind. 543, 63 N.E. 25 (involving statute permitting mortgage deduction on real estate).

As part of its summary judgment motion, Inland introduced exhibits to demonstrate that the assessment of its property

was not equal and uniform with other similarly situated properties. Specifically, Inland introduced evidence of six comparable properties that had a similar paper recycling waste operation and had received an RRS certification from IDEM. (Pet'r Exs. H–O.) [10] These six properties were comparable to Inland's because, just as Inland, they: (1) were certified as an RRS; (2) received that certification before the statute was amended; and (3) had an RRS that turned paper into a useful product. The State Board did not dispute that these RRS properties were substantially similar to Inland's RRS. (Pet'r Ex. 5 at 4, 6; Resp't Br. at 4–5.)

In 1994, a taxpayer was required to obtain an RRS certification and file an RRS deduction form *each year* that he sought the RRS deduction. I.C. § 6–1.1–12–28.5. Thus, in order to obtain the RRS deduction for the 1994 assessment year, Inland filed an application on March 24, 1994, with IDEM to request that property at its Newport Mill be certified as an RRS. On April 29, 1994, IDEM certified that Inland's Newport Mill contained an RRS that converted solid waste into useful products. In June 1994, Inland filed a Form RRS–1 with the county auditor, and the county assessor approved the Form RRS–1. Thereafter, the auditor sent Inland a tax statement, which reflected Inland's $6,298,020 RRS deduction.

When the legislature amended the RRS deduction statute in May 1995, it created a classification based upon the date that a taxpayer first had its RRS certified by IDEM. I.C. § 6–1.1–12–28.5. This classification, however, was arbitrary because it was not based on differences "naturally inhering" within the RRS property itself. *See St. John V*, 702 N.E.2d at 1042; *Lyon*, 359 N.E.2d at 934. This classification allowed some taxpayers with comparable properties to obtain the RRS deduction on a phased out basis for the 1994 to 1997 assessment years, [11] while other taxpayers, such as Inland, were altogether denied the RRS deduction for the 1994 assessment year. *See* I.C. § 6–1.1–12.28.5. Because the classification created an artificial distinction, the assessed value of Inland's RRS property is not equal or uniform with comparable RRS properties. Accordingly, the amended RRS statute violates Article 10, § 1 of the Indiana Constitution as applied to Inland. *See Harrington*, 525 N.E.2d at 361 ("The constitutional requirement of uniform and equal taxation requires that the assessments be consistent with similar property of the same classification.").

### D. Remedy

 Inland argues that it has a right to a remedy under the Due Process Clause [12] and the Due Course of Law

---

10. Inland's evidence establishes the following facts: (1) Beveridge Paper Mill received IDEM certification of its RRS in 1993; (2) Kieffer Paper Mills received IDEM certification of its RRS in 1993; (3) Weston Paper and Manufacturing Company received IDEM certification of its Vigo County RRS in 1992 and 1993 and of its Allen County RRS in 1992; (4) Jefferson Smurfit Corporation received IDEM certification of its RRS in 1993; (5) Packaging Corporation of America received IDEM certification of its RRS in 1992; and (6) Rock–Tenn Company received IDEM certification of its RRS in 1990 and 1992. (Pet'r Exs. H–O.)

11. These taxpayers could receive the phased out RRS deduction if they had received a RRS certification from IDEM "for the 1993 assessment year or a prior assessment year" and had "filed a timely application for the deduction for the 1993 assessment year." I.C. § 6–1.1–12–28.5(b)

12. The Due Process Clause of the United State Constitution states, in relevant part, "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor

Clause.[13] The State Board asserts Inland should get nothing. "Due process requires otherwise." *Bulkmatic Transp. Co. v. Indiana Dep't of State Revenue*, 715 N.E.2d 26, 35 (Ind. Tax Ct.1999) (*Bulkmatic III*) (citing *Reich v. Collins*, 513 U.S. 106, 115 S.Ct. 547, 130 L.Ed.2d 454 (1994); *McKesson Corp. v. Div. of Alcoholic Beverages & Tobacco*, 496 U.S. 18, 110 S.Ct. 2238, 110 L.Ed.2d 17 (1990)).

■ The Due Course of Law requirement is analogous to the Due Process Clause.[14] *Indiana High School Athletic Ass'n, Inc. v. Carlberg*, 694 N.E.2d 222, 241 (Ind.1997); *Town of St. John v. State Bd. of Tax Comm'rs*, 690 N.E.2d 370, 383 n. 29 (Ind. Tax Ct.1997) (*St. John III*), *rev'd on other grounds* (citing *Haimbaugh Landscaping v. Jegen*, 653 N.E.2d 95, 104 (Ind.Ct.App.1995), *trans. denied*). Due process requires that the State provide a taxpayer, who is denied the legality of a tax, a "clear and certain remedy." *Reich*, 513 U.S. at 108, 115 S.Ct. 547; *McKesson*, 496 U.S. at 33, 110 S.Ct. 2238 (quoting *Atchison, T. & S.F.R. Co. v. O'Connor*, 223 U.S. 280, 285, 32 S.Ct. 216, 56 L.Ed. 436 (1912)); *see also Dalton Foundries, Inc. v. State Bd. of Tax Comm'rs*, 653 N.E.2d 548, 553 (Ind. Tax Ct.1995) (citing *McKesson*, 496 U.S. at 36, 110 S.Ct. 2238 (finding that

"[e]xtraction of a tax ... constitutes a deprivation of property, and states must provide procedural safeguards against the unlawful extraction of a tax in order to satisfy the commands of due process")).

■ Under due process, a remedy may be provided either before the disputed taxes are paid (predeprivation), after they are paid (postdeprivation), or both. *Reich*, 513 U.S. at 108, 115 S.Ct. 547; *see also Bulkmatic III*, 715 N.E.2d at 35 & 35 n. 17. Here, by challenging the constitutionality of the RRS deduction before paying the applicable taxes, Inland has sought a "clear and certain" predeprivation remedy.[15] Because this Court has found that the RRS deduction statute was unconstitutional as applied to Inland, Inland is entitled to such a remedy.

Inland seeks to have its property taxes resulting from the unconstitutional certification date distinction declared unenforceable. Specifically, Inland seeks to have the RRS statute applied without regard to the discriminatory RRS certification date provisions. (Pet'r Supplemental Br. at 12.) The State Board argues that if the certification date classification is unconstitutional, then the only remedy is for the Court to void the entire statute, which would result in no RRS deduction for Inland or any other taxpayer. (Resp't Supplemental Br. at 5–6, 9.)[16]

deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST., amend. XIV, § 1.

13. The Due Course of Law Clause of the Indiana Constitution states, in relevant part, "All courts shall be open; and every person, for injury done to him in his person, property, or reputation, shall have remedy by due course of law." IND. CONST., Art. 1, § 12.

14. Therefore, this Court's reference to "due process" will signify both due process and due course of law.

15. Pursuant to Indiana Code § 6–1.1–15–10, Inland has withheld payment of the contested taxes pending this appeal. (Pet'r Suppl. Br. at 11.)

16. As part of its argument that Inland should receive no remedy, the State Board unsuccessfully tries to distinguish due process cases that require a remedy (*Newsweek v. Florida Department of Revenue*, 522 U.S. 442, 118 S.Ct. 904, 139 L.Ed.2d 888 (1998); *Reich*, 513 U.S. 106, 115 S.Ct. 547, 130 L.Ed.2d 454; and *Harper v. Virginia Department of Taxation*, 509 U.S. 86, 113 S.Ct. 2510, 125 L.Ed.2d 74 (1993)) by contending that Inland should receive nothing because "the authority to tax is not challenged, only the failure to allow a deduction." (Resp't Supplemental Br. at 8.) However, the State Board's "attempt to elevate nomenclature over the due process rights of the petitioner[ ] is wholly unmeritorious." *See Bulkmatic III*, 715 N.E.2d at 35 (finding a similar argument made by the Department of

This Court has found that the amended RRS deduction statute was unconstitutional as applied to Inland. Therefore, the taxes resulting from the unconstitutional certification date distinction in the amended RRS statute are unenforceable against Inland. Inland is not required to pay any unlawful tax that would result from an unconstitutional restriction of the RRS deduction. Thus, Inland is entitled to get the benefit of the RRS deduction on a phased out basis. Accordingly, this case is REMANDED to the State Board for a determination consistent with this Court's opinion.

### CONCLUSION

For the aforementioned reasons, this Court finds that the material facts in this case are undisputed and that, as a matter of law, the amended RRS statute violated the Property Taxation Clause of the Indiana Constitution as applied to Inland's property. Therefore, this Court GRANTS Inland's motion for summary judgment and DENIES the State Board's cross motion for summary judgment. Accordingly, the State Board's determination is REVERSED and this case REMANDED to the State Board with instructions to grant Inland the RRS deduction for 1994 and the proper phase out.

---

Revenue regarding refunds versus taxes to be without merit). In *Newsweek, Reich,* and *Harper,* an exemption which discriminated against certain taxpayers was found to be invalid. *See Newsweek,* 522 U.S. at 442, 118 S.Ct. 904 (exemption applied to newspapers but not magazines); *Reich,* 513 U.S. at 108, 115 S.Ct. 547 (exemption applied to state retirement benefits but not federal); *Harper,* 509 U.S. at 88, 113 S.Ct. 2510 (exemption applied to state retirement benefits but not federal). The taxes resulting from the uncon-stitutional restriction of the exemption were unenforceable. Therefore, those taxpayers who had not received the exemption were entitled to a "clear and certain remedy." *See Newsweek,* 522 U.S. at 445, 118 S.Ct. 904; *Reich,* 513 U.S. at 113, 115 S.Ct. 547. Likewise, the taxes resulting from the unconstitutional certification date distinction in the amended RRS statute are unenforceable against Inland. Therefore, Inland is entitled to seek a clear and certain remedy.